Donyell A. MARSH, et al., Appellants,

v.

Marion S. BARRY, Individually/as Mayor of D.C., et al.

Ricky BROGSDALE, et al., Appellants,

v.

Marion S. BARRY, Individually/as Mayor of D.C., et al.

Nos. 86–5388, 86–5389.

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1987.

Decided July 28, 1987.

Robert J. Flynn, Jr., with whom Catherine A. Brown, Washington, D.C., was on brief, for appellants.

Michele Giuliani, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellees.

Before WALD, Chief Judge, and MIKVA and D.H. GINSBURG, Circuit Judges.

Opinion for the court Per Curiam.

PER CURIAM:

This is an appeal from a grant of summary judgment in favor of the District of Columbia and several governmental officials and correction officers (collectively "appellees"), dismissing two consolidated actions by 17 former or present inmates of the District of Columbia Central Detention Facility ("the Jail") under 42 U.S.C. §§ 1983, 1985 and 1986.[1] The action arose from a fire set by certain inmates in the Southwest Two housing unit of the Jail on July 22, 1983. Appellants, who were then also inmates residing in Southwest Two, sued to recover damages for injuries from (1) the fire itself, which they alleged was caused by unconstitutional overcrowding of the Jail, and (2) other alleged violations of their constitutional rights arising from the appellees' handling of the situation created by the fire, including a delay in evacuating the cell block and extinguishing the fire, inadequate medical care after the fire, and the temporary denial of access to telephone calls, mail privileges, showers, clean linen and clothing, recreation, and attendance at religious services.

The district court rejected both claims, ruling respectively (1) that as a matter of law the plaintiffs could not establish that the unconstitutional overcrowding of the Jail—the fact of which is undisputed—was the proximate cause of the fire and of the injuries caused by it; and (2) that the various actions taken by Jail officials during and subsequent to the disturbance were reasonable under the circumstances. *Marsh v. Barry*, No. 84–2249, 84–2251 (D.D.C. June 4, 1986); Record Excerpts ("R.E.") at 37. We affirm the grant of summary judgment as to second set of claims, but reverse and remand the first claim for the reasons stated below.

## I. BACKGROUND

Certain issues in this appeal directly implicate our decision in *Campbell v. McGruders*,[2] which held that the Jail was unconstitutionally overcrowded. Because the appellants rely on *Campbell* not only to establish the fact of overcrowding, but also to demonstrate that officials were aware of the dangers inherent in the situation but failed to cooperate with the district court nonetheless, we briefly review the part of that litigation that bears on the current appeal. We then address the background of the case before us.

---

1. The individual defendants are: Marion S. Barry, Mayor of the District of Columbia; James Palmer, Director of the District of Columbia Department of Corrections; George Holland, Assistant Director for Detention Services; Jessie Jones, Superintendent of the Jail; and seven correctional officers employed at the Jail.

2. 580 F.2d 521 (D.C.Cir.1978).

### A.

In *Campbell,* an action brought by pretrial detainees against three District of Columbia officials,[3] we determined that overcrowding at the Jail violated the detainees' constitutional rights, but remanded the case for clarification of certain facts. We instructed the court below to retain jurisdiction and to monitor the conditions at the Jail until it was able to find that violations were not likely to recur.

One of the consequences of the overcrowding that we found so troubling in *Campbell* was the practice of housing two inmates in cells designed for one ("double-celling"). Understandably, therefore, when officials of the Jail came forward in March 1982 to ask for authorization to reinstitute double-celling, the district court denied the request. *Campbell v. McGruder,* No. 1462–71 (D.D.C. March 8, 1982). Following testimony that the overcrowding at the Jail had reached crisis proportions, however, the court later permitted double-celling, subject to certain limitations. *Id.* 554 F.Supp. 562 (D.D.C.1982). Specifically, no pretrial detainee was to be double-celled for more than 12 hours in any day nor for more than 30 days. The court subsequently added to its order requirements for medical screening of inmates prior to double-celling, recordkeeping, and reporting. *Id.* (December 17, 1982).

Several months later, the *Campbell* plaintiffs filed a motion with the court for an order directing Mayor Barry to show cause why he should not be held in contempt for violating the court's orders of October 8, 1982, and December 17, 1982. At a hearing on the motion in May, less than two months before the fire that is the subject of the present appeal, George Holland, Assistant Director for Detention Services, testified that he believed that the overcrowding had brought the Jail "as close to the danger point as you can get." *Campbell v. McGruder,* No. 1462–71, slip op. at 20–21 (June 27, 1983); Appendix to Appellants' Brief ("App.") at 198–99. The "danger point," Holland told the district court, could be understood as the point at which rioting would occur.

On September 30, 1983, about two months after the fire, the district court held Mayor Barry, Holland and James Palmer, Director of the District of Columbia Department of Corrections, in civil contempt for having failed to comply with its October and December 1982 orders, and imposed substantial monetary fines.[4] The court found that the appellees had failed to make a good faith effort to comply with the recordkeeping and reporting requirements, and with the time limits on the doublecelling of detainees. In addition, the court stated: "The evidence strongly suggests, and the court so finds, that the defendants deliberately sought to conceal their violations of the orders from the court." *Campbell v. McGruder,* No. 1462–71, slip op. at 10 (Sept. 30, 1983); App. at 213.

### B.

The events at issue in the present appeal began on July 22, 1983—while the contempt issue in *Campbell* was *sub judice* —when one or more inmates set a fire in the Southwest Two housing unit of the Jail, igniting mattresses, chairs, a television set, and other items. Appellees allege that the fire was started because the inmates did not that day receive their scheduled canteen, consisting of candy, cigarettes, and other items that were delivered to the housing units on a regular basis, and because the periodical count of inmates was late that day, which in turn caused a delay in the scheduled recreation period. Appellants disagree, maintaining simply that the fire was set because of the deplorable conditions arising from overcrowding.

---

**3.** All three defendants in *Campbell* are also defendants in the actions under review. They were: the Mayor, the Director of the Department of Corrections, and the Superintendent of the Jail.

**4.** The court provided that the contemnors could purge themselves of contempt and avoid the fines if they met certain conditions, but the record in this appeal does not indicate whether those conditions were met.

Appellants filed their complaint in federal district court almost a year after the fire, alleging violations of the First, Fifth, and Eighth Amendments to the United States Constitution and of 42 U.S.C. §§ 1983, 1985, and 1986. They also alleged several violations of the common law of the District of Columbia.

The allegations of the complaint make out two main theories of liability. The first theory, which relates to the fire and the period of time preceding it, is that the Mayor and certain prison officials knew that the "potentially explosive atmosphere" created by the overcrowding "was likely to result in rioting and fires,"[5] yet took no measures to relieve the overcrowding and prevent the likely results. This official inaction, the inmates charged, was the proximate cause of a riot and of the fire in Southwest Two.

The second theory of the complaint concerns constitutional violations alleged to have been committed by prison officials during the fire and in the two days following it. The appellants charged that correctional officers deliberately ignored the fire, attempting neither to extinguish it nor to lead them to safety, until it became uncontrollable, and that in so doing the officers were following policies and procedures of the District of Columbia. They also maintained that, by denying the requests for medical attention of those suffering from smoke inhalation and other injuries, the appellees demonstrated a deliberate indifference to the inmates' serious medical needs. The inmates further argued that placing them in administrative segregation after the fire constituted punishment without cause, notice, or hearing, and that they were wrongly denied access to outgoing mail and religious services, and deprived of their telephone, visitation, recreational, and other privileges in the two days following the fire.

The inmates' amended complaint contained only general allegations, and included no references to affidavits or other probative materials. After filing an answer, the appellees moved to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment in their favor. In a memorandum accompanying the motion, the appellees presented their view of what transpired at the Jail, and supported their assertions with numerous references to affidavits, deposition transcripts, and exhibits. In the same document, the appellees interpreted the inmates' claims against the District of Columbia and its senior officials as attempts to establish liability on the principle of *respondeat superior*, and argued that this was not permissible under section 1983. App. at 92. The appellees did not respond directly to the inmates' contention that conditions related to overcrowding at the Jail proximately caused the fire, either to deny that overcrowding caused the fire or to argue that the fire was unforseeable. The inmates filed an opposition consisting of general denials of the appellees' version of the facts, and a reassertion of the allegations in the amended complaint. Again their filing was devoid of any reference to supporting documentation.[6]

The district court granted summary judgment in favor of the appellees on the entire action. The court concluded that the inmates could not maintain their claim that the fire was proximately caused by the illegal overcrowding because such a wantonly self-destructive act was unforseeable as a matter of law. As to the second set of claims, concerning officials' actions during and after the fire, the court noted that the inmates are required to prove more than mere negligence in a section 1983 action,[7]

---

**5.** Amended Complaint, para. 56; App. at 51.

**6.** The inmates contend in their Reply Brief that they submitted a copy of their Answers to Interrogatories with their Opposition to Defendants' Motion for Summary Judgment. Even if this was so, they did not include citations to the Answers in their Opposition brief. The district court, therefore, would have no way of knowing

which facts the inmates were attempting to prove by the submission.

**7.** *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); and *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1977).

and that prison officials are in the best position to determine when the normal prison routine can be restored after a disruption, and should not be second-guessed by the courts.[8] "All of [the] disruptions in prison routine were logically related to the imperative of restoring order and ensuring that new riots would not develop." *Marsh v. Barry*, No. 84–2249, 84–2251, slip op. at 7 (D.D.C. June 4, 1986); R.E. at 43. Going to the heart of the matter, the court held that the affidavits submitted by the appellees were persuasive as to the reasonableness of their conduct, and were not "adequately rebutted by plaintiffs' meager submissions in opposition." *Marsh v. Barry*, No. 84–2249, 84–2251, slip op. at 4; R.E. at 40.

## II. DISCUSSION

### A.

We affirm the grant of summary judgment against the inmates as to the claims concerning the prison officials' conduct during and after the fire, for the reasons stated by the district court. Fed. R.Civ.P. 56(e) provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The inmates did not heed this requirement. The appellees' motion for summary judgment asserting the reasonableness of their conduct was well supported by affidavits, deposition transcripts and exhibits, yet, in their opposition to the motion, the appellants did not refer the court to a single affidavit or other piece of documentary evidence. Instead, they relied on unsupported allegations similar to those contained in their complaint. *See First National Bank of Arizona v. Cities Service Co.*, 391 U.S.

253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968) (there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party). In these circumstances, summary judgment was properly entered against them.

### B.

Turning next to what the district court properly viewed as "the most difficult issue" in the case, we must determine whether the appellants are precluded, as a matter of law, from establishing that their alleged injuries were a proximate result of the overcrowding.

The primary consideration in determining the liability of a party for an initial act of negligence, even when an intervening criminal act by a third party is the immediate cause of the harm, is whether the resulting harm was reasonably foreseeable. "If the danger of an intervening negligent or criminal act should have reasonably been anticipated and protected against, the defendant will be held responsible for the damages which result despite the entry of another act in the chain of causation." *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.*, 350 A.2d 751, 752 (D.C.Ct.App. 1976).

Courts are properly reluctant to find that an intervening criminal act should have been foreseen by the original tortfeasor. Only in an unusual circumstance can one person realistically be required to anticipate that someone else will violate the law, especially when doing so would be extremely dangerous to the violator himself. Nonetheless, our usual reluctance may be overcome by the unusual factual circumstances of the present case. *See District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C.App.1987) ("heightened showing of forseeability in cases involving intervening criminal conduct ... does not require previous occurrences of the particular type of harm, but can be met instead by a combination of factors which give defendants an

8. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct.  1861, 1877–78, 60 L.Ed.2d 447 (1979).

increased awareness of the danger of a particular criminal act.")

In ordinary circumstances, a criminal act breaks the chain of legal causation because it cannot be foreseen. Even in the somewhat unusual setting of a jail, where there may be a constant background susurrus of relatively minor crimes being perpetrated by one inmate against another, an official would not normally be held to expect the commission of criminal acts as self-endangering as arson. Yet in this case, even arson may not have been beyond the anticipation of prison administrators.

The court below recognized that foreseeability was the key element in its analysis;[9] the court even allowed that officials who maintain overcrowded prisons may be liable under section 1983 and common law tort doctrine, in certain circumstances, for injuries arising out of inmates' reactions to the overcrowding. It held, however, that this was not such a case:

> [I]t is simply not fair or reasonable to hold that, in the absence of prior warning, prison officials should anticipate that inmates will engage upon a course of conduct that poses very severe risks to their own safety and take steps to guard against such a contingency. The inmates who set fire to the Southwest unit were not merely acting criminally. They were acting in a fashion that was so unreasonable and so dangerous to their own safety that it can be described as almost suicidal behavior. The Court concludes that such behavior is an unforeseeable event that breaks the legally required chain of causation and insulates the original tortfeasors from liability.

*Marsh v. Barry*, No. 84-2249, 84-2251, slip op. at 9; R.E. at 45.

Certainly the prison officials here received no specific "warning," as far as the allegations go, that inmates would engage in the "almost suicidal behavior" of setting a major fire in the cell block. We do know, however, that as of May 24, 1983, about two months before the fire, "rioting" as a result of the overcrowding at the Jail *was* foreseeable. On that date, the Assistant Director of the Department of Corrections told the court in *Campbell*, in so many words, that the conditions at the Jail had significantly increased the chances of rioting; the following colloquy between the court and George Holland occurred in the hearing on the motion to show cause:

> The Court: Are you approaching the danger point at the Jail?
>
> Holland: I believe that when we begin to have double-celling and also repopulate your open area, that is approaching the danger point. Because what you have done, as Your Honor indicated, is take away your recreation areas, your basketball courts, your lounges, as well as have the cells doubled. And I think you could expect when you do that an increased boredom, an increased contact—that is, closer contact between individuals—and I think when you begin to do that tempers begin to flare, and you are as close to the danger point as you can get.
>
> . . . .
>
> The Court: When you say danger point, what are we talking about?
>
> Holland: Danger point just means that you know out of your experience that when you crowd that you can expect that tempers are going to flare. When those tempers flare, they flare at each other, and they may flare at staff.
>
> The Court: . . . In ordinary language, we are talking about rioting.
>
> Holland: I think you could say that, Your Honor.

*Campbell v. McGruder*, No. 1462-71, slip op. at 20-21 (June 27, 1983); App. at 198-99. Since rioting at the Jail was actually *foreseen*, at least rioting must have been foreseeable.

The essential reason for which the district court held that the fire was unforeseeable was that it posed a serious danger to the inmates who started it. A riot too, may be dangerous to those who instigate it, however; this suggests that the lower court would have made the same finding of unforeseeability with respect to a riot.

---

9. *Marsh v. Barry*, Nos. 84-2249, 84-2251, slip op.    at 8; R.E. at 44.

Yet, in view of the testimony in *Campbell*, such a finding might well be unwarranted.

It goes almost without saying that many acts of violence, even in an overcrowded prison, will be beyond the capacity of prison officials to anticipate. The mere fact that a prison is overcrowded, even unconstitutionally so, does not convert the institution into a Petri dish for the multiplication of constitutional torts. Prison officials cannot be held answerable every time an inmate in an overcrowded prison commits an act of violence, simply because the victim of such violence asserts that the ultimate cause of his misfortune is the overcrowding. Rioting, as a general disturbance, however, is substantially different from an isolated act of violence by one prisoner against another. The underlying rate of such random acts of violence may rise with overcrowding, to be sure, but it would still be the unusual case in which a specific act could be attributed to the effects of overcrowding. *See Morgan v. District of Columbia*, 824 F.2d 1049, (D.D.Cir. 1987). Rioting, on the other hand, is among the chief evils one fears will result from overcrowding a prison—as both common sense and the testimony of an appellee prison official suggest. The crucial question, therefore, is whether the fire was part of, or sufficiently akin to, a "riot," so as to come within the scope of what Holland actually anticipated and what the other appellees should have anticipated. The fire may have been a relatively isolated criminal act; alternatively, the fire may have been set in the course of a riot encompassing other riotous behavior. Recovery

would be foreclosed in the first case, but not in the second.

Summary judgment in favor of the appellees was proper only if undisputed facts set the July 22 fire apart from what can fairly be deemed a riot (or if circumstances had so changed between May 24 and July 22 as to make even a riot unforeseeable as of the later date). Such facts were not alleged or shown by the appellees.[10] We therefore find that summary judgment was inappropriate because there are genuine issues of material fact, including: (1) whether the fire on July 22, 1983, was part of the sort of general disturbance commonly referred to as a "riot,"[11] taking into account such factors as when the fire was set in relation to other inmate hostilities and the number of inmates that participated in setting and perpetuating it; and (2) if it was, whether such general disturbance was directly or indirectly caused by the illegal overcrowding at the Jail.

### III. CONCLUSION

Insofar as the district court's grant of summary judgment was based on its conclusion about proximate cause, it must be vacated.[12] It is not apparent from the record that the setting of the fire was an isolated unforeseeable act, separate and distinct from what might be deemed a foreseeable riot. If overcrowding led to rioting by the inmates, and the setting of the fire was an integral part of that riot, then the overcrowding could be said to be the proximate cause of the fire.

---

**10.** Indeed, they asserted that a fire was set in the course of "riotous and uncontrollable" behavior. Defendants' Memorandum in Support of Motion for Summary Judgment at 1; App. at 89. *But see* note 11, *infra*.

**11.** For reasons not immediately apparent, the inmates argue that there was no "riot" or "uprising" at the Jail, but only a fire. Reply Brief of Appellants at 9. In the Amended Complaint, however, they at least suggest the contrary: "Defendants also knew that this [potentially explosive] atmosphere was likely to result in rioting and fires set by inmates." Amended Complaint, para. 56; App. at 51. Since the significance of whether a riot occurred was not apparent in the

proceedings below, we do not regard the inmates' characterization on appeal as a withdrawal of the allegation in the Complaint; nor are the appellees bound by their use of the term "riot" below, *see* note 10, *supra*.

**12.** The district court also dismissed the appellants' claims under sections 1985 and 1986. The court was of the view, which the appellants challenge, that claims under sections 1985 and 1986 cannot be maintained in the absence of a cognizable claim under section 1983. Without deciding that question, these claims must be reinstated in light of our reversal and remand on the proximate cause issue.

*Affirmed in part, reversed and remanded in part.*