ESTATE OF Erik SCHILLING, by Christine Schilling, Special Administratrix, and Christine Schilling, Individually, Plaintiffs-Appellants, †

v.

BLOUNT, INC., a Foreign Corporation, Defendant-Respondent,

Alfredo GONZALEZ, Carmen Gonzalez, Catalina Gonzalez, Heritage Mutual Insurance Company, a Wisconsin Insurance Company, Thomas Freeb, Gerry Zaren, Hannelor Zaren, ABC Insurance Company, a Foreign or Domestic Insurance Company, Karl Cerny, Sr., North River Insurance Company, a Foreign Insurance Corporation, Colt Industries, Inc., Colt Firearms Division, a Pennsylvania Corporation, Central Sales Corporation, a Domestic Corporation, and PQR, a Foreign or Domestic Corporation or Individual or Partnership, Defendants.

Court of Appeals

*No. 89-0085. Submitted on briefs July 11, 1989.—Decided October 10, 1989.*

(Also reported in 449 N.W.2d 56.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Herbon, McLaughlin & Herbon,* by *Geoffrey M. Herbon,* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Davis & Kuelthau, S.C.,* by *David J. Vergeront* and *Miles S. Mittelstadt,* of Milwaukee.

Before Moser, P.J., Fine and Nettesheim, JJ.

MOSER, P.J.   The Estate of Erik Schilling (Schilling) appeals from a summary judgment granted on the motion of and in favor of Blount, Inc. (Blount).

On September 4, 1982, Schilling was visiting his friend Karl Cerny, Jr., (Cerny) at Cerny's home located in the city of Milwaukee. The two boys were listening to music in Cerny's attic bedroom. Cerny had previously purchased a .22 caliber Colt pistol. Cerny loaded the pistol with live .22 bullets, which were furnished with

the sale of the pistol. He cocked the gun, pulling back the hammer, when he heard a noise coming from the downstairs of his home. He attempted placing the cocked pistol on a cabinet to turn down his stereo. As he put the weapon down, it fired and a bullet struck Schilling in the head, which remained permanently lodged in his brain. Both Cerny and Schilling were fifteen years of age at the time that Schilling was shot.

As a result of the shooting, Schilling was rendered a spastic quadriplegic, unable to control any movements of his body including his ability to speak, until he died on October 10, 1988. Before Schilling died, he and his mother, Christine, sued all of the parties involved in the sale of the pistol to Cerny. The defendants included the minors who were involved in the sale of the pistol to Cerny, the minors' parents, and their insurance companies; Cerny, his father, and his father's insurance company; Colt Industries, Inc., the manufacturer of the pistol; Central Sales Corp., the distributor of the pistol; and Blount, the manufacturer of the bullets.

Schilling claimed that Blount's bullets were released into the stream of commerce in a defective and unreasonably dangerous condition to users and bystanders as to their design and manufacture. Schilling's defective product claim rests on the fact that Blount had failed to adequately warn and instruct the users of its bullets of the dangers of handling and using loaded firearms. Schilling argues that Blount should be held liable in strict liability and/or common law negligence for releasing bullets into the stream of commerce which were inherently dangerous. Blount answered denying liability under either strict liability or negligence, and denying damages to Schilling's mother in her derivative suit. In Blount's amended answer, it alleged as an affirmative defense that Schilling's injuries were not proximately caused by any

611

alleged defect that was attributable to the cartridges manufactured by Blount. Blount further asserted as an affirmative defense that Schilling's injuries occurred as a result of an intervening and superseding cause which bars any negligence of Blount.

Blount then moved for summary judgment against Schilling's claims arguing that Schilling had failed to show that Blount's bullets were in an unreasonably dangerous, defective condition, and that Blount had a duty to warn anyone of the open and obvious dangers of its bullets. Schilling responded to the motion by claiming that there were material facts in issue since the bullets that Blount manufactured were defective for Blount's failure to adequately warn users of the inherent danger of the bullets. The trial court granted summary judgment in favor of Blount because there were no material issues of fact and the law imposes no duty to warn since the dangers involved in using bullets are open and obvious.

The sole issue on this appeal is whether the trial court erred in granting summary judgment to Blount because there were material issues of fact or because it erroneously decided the issues of laws. We affirm.

In reviewing a summary judgment, appellate courts are required to follow the same methodology as the trial court.[1] "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[1]*Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We are governed by the same standard as in sec. 802.08(2), Stats.

law."[2]

# I. PRODUCTS LIABILITY

Our supreme court has determined that manufacturers of explosives and weapons are held to a higher degree of care to insure that their products function in a normal manner.[3] In 1967, that court adopted sec. 402A of the Restatement (Second) of Torts (1964) criteria for strict liability cases.[4] The Restatement rule on strict liability reads as follows:

Sec. 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation

[2]*Messner v. Briggs & Stratton Corp.,* 120 Wis. 2d 127, 131, 353 N.W.2d 363, 365 (Ct. App. 1984).

[3]*Flies v. Fox Bros. Buick Co.,* 196 Wis. 196, 203, 218 N.W. 855, 857 (1928).

[4]*Dippel v. Sciano,* 37 Wis. 2d 443, 459, 155 N.W.2d 55, 63 (1967).

with the seller.[5]

In analyzing the Restatement language our court held that from the rule's plain language, a plaintiff must prove:

(1) [T]hat the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.[6]

The court did not specifically accept or reject any of the Restatement's comments when it adopted the rule in 1967.[7] In discussing various defenses, the court noted that "the intended use [of the product] can be coupled with inherent danger—anyone can cut his finger with a sharp knife or puncture it with a fishhook, and teeth can be damaged by the sugar in the consumption of soft drinks."[8]

Our supreme court has subsequently noted the following language from comment i to the above Restatement. " '[T]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its charac-

[5]Restatement (Second) of Torts sec. 402A (1964).
[6]*Dippel,* 37 Wis. 2d at 460, 155 N.W.2d at 63.
[7]*Id.* at 459, 155 N.W.2d at 63.
[8]*Id.* at 460, 155 N.W.2d at 63–64.

teristics.' "[9] Thus, the small size of an automobile like a Volkswagen as compared with the size of a Cadillac does not render the Volkswagen inherently dangerous because car size cannot be hidden as required under the "unreasonably dangerous" defect provision for strict products liability to apply.[10]

In a subsequent case, the supreme court affirmed the trial court's sustaining of a demurrer in a products liability suit against a swimming pool manufacturer. In this case, the aboveground pool had a retractable ladder, which had been left in the down position.[11] A two-year old child climbed the ladder and fell into the pool.[12] The child suffered severe brain damage for which the plaintiffs sought money damages for the child and derivative damages for the child's parents.[13] The court held that the complaint did not state a cause of action. The court held as a matter of law that the swimming pool product was not defective because when the product left the producer it was as safe as it could reasonably be.[14]

---

[9] *Arbet v. Gussarson*, 66 Wis. 2d 551, 557, 225 N.W.2d 431, 435 (1975) (quoting Restatement (Second) of Torts sec. 402A comment i (1964)).

[10] *Id.*

[11] *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 327, 230 N.W.2d 794, 796 (1975).

[12] *Id.*

[13] *Id.*

[14] *Id.* at 331, 230 N.W.2d at 798. In adopting comment g to sec. 402A, the supreme court noted that:

> Comment g to sec. 402A of Restatement, 2 Torts 2d, defines "defective condition" in part as follows:
> " 'g. Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.' "

*Id.* at 330, 230 N.W.2d 797-98.

615

That court further stated that the pool was not unreasonably dangerous under comment i of the Restatement because the average consumer would be completely aware of the risk to small children.[15] In adopting the Restatement's comment i, the court held that the test in Wisconsin as to "whether a product contains an unreasonably dangerous defect depends upon the reasonable expectations of the ordinary consumer concerning the characteristics of this type of product."[16] The court further stated: "If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective. This is an objective test and is not dependent upon the knowledge of the particular injured consumer . . . ."[17]

In the latest case dealing with strict liability as it relates to a defective product, our supreme court noted two approaches to evaluate design defects. The first is a consumer-contemplation test and the second is a danger-utility test.[18] Wisconsin has opted for the consumer contemplation test which requires a case-by-case analysis of whether a product is defective and unreasonably dangerous.[19]

In this case, for Schilling's products liability claim against Blount, we hold that the objective consumer contemplation test supports only one conclusion. That is, because of the inherent danger of cocking the hammer of

---

[15]*Id.* at 333, 230 N.W.2d at 799.

[16]*Id.* at 332, 230 N.W.2d at 798.

[17]*Id.*

[18]*Sumnicht v. Toyota Motor Sales, U.S.A., Inc.,* 121 Wis. 2d 338, 367, 360 N.W.2d 2, 15 (1984).

[19]*Id.* at 368, 360 N.W.2d at 15.

a weapon containing live bullets, there is an open and obvious dangerous situation. This open and obvious danger would be contemplated by an ordinary consumer who has ordinary knowledge which is common to the community. The .22 caliber bullets manufactured and distributed into the community by Blount, with or without a warning, were not unreasonably dangerous because the average consumer would reasonably anticipate the dangers inherent with the product. A pistol which is loaded with bullets and subsequently cocked gives rise to an inherent danger. Thus, the trial court did not err in granting summary judgment to Blount since the bullets here were not defective for their intended use. Rather, this product presented an open and obvious danger that the average consumer would recognize. Blount's distribution of its bullets into the stream of commerce does not give rise to a cause of action for strict liability. Since there were no material issues of fact, the trial court was correct in determining as a matter of law that there is no duty to warn of an inherent danger that is open and obvious to the community at large.

## II. COMMON LAW NEGLIGENCE

The issue here is whether a bullet manufacturer has a common law duty to warn of the danger of cocking a weapon that is loaded with bullets.

■

For a negligence cause of action there must exist: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.[20] Whether a duty exists is a question

---

[20]*Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976).

of law,[21] which an appellate court decides without deference to the decision of the trial court.[22] "Duty is the exercise of reasonable care whenever it is foreseeable that one's conduct may cause harm to another," and negligence is the failure to use the degree of care that would be exercised by a reasonable person under similar circumstances.[23] Wisconsin's civil jury instructions concerning manufacturer's negligence reads in part as follows: "However, a manufacturer (supplier) does not have a duty to warn about dangers that are known to the user, or are obvious to or readily discoverable by potential users, or are so commonly known that it can reasonably be assumed that users will be familiar with them."[24] That instruction cites to the Restatement (Second) of Torts sec. 394, which reads as follows: "The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge."[25] The Restatement (Second) of Torts dealing with supplier's common law negligence duties reads as follows:

> Sec. 388. Chattel Known to be Dangerous for Intended Use
>
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endan-

[21]*Id.*

[22]*Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

[23]*La Chance v. Thermogas Co. of Lena,* 120 Wis. 2d 569, 574, 357 N.W.2d 1, 3 (Ct. App. 1984).

[24]*See* Wis J I—Civil 3242.

[25]Restatement (Second) of Torts sec. 394 (1964). *See also* sec. 395.

gered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

    (a)   knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

    (b)  has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

    (c)   fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.[26]

The Restatement's comment on clause (b) above notes that when the danger involved in the chattel is open and obvious there is no duty to warn:

> *k.* *When warning of defects unnecessary.* One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made.[27]

In accord with the above Restatement sections and in particular with comment k, the vast majority of courts

---

[26]Restatement (Second) of Torts sec. 388 (1964).

[27]Restatement (Second) of Torts sec. 388 comment k (1964).

619

have held that a manufacturer (supplier) of a product is not negligent when failing to warn against patent or open and obvious dangers involved with the use of their products.[28] We agree with the Restatement sections quoted above and those courts' holdings as they affect the matter before this court. Therefore, we adopt secs. 394, 388, including comment k to sec. 388, of the Restatement. We hold, as a matter of law, that Blount, the manufacturer of the .22 caliber bullets, owes no duty to warn of the dangerousness of its product when loaded into a suitable weapon when the weapon's hammer is cocked. The fired bullet was designed to and did exactly what any reasonable person would expect it to do. Because the danger involved in handling weapons loaded with bullets is so patent, open and obvious, no reasonable person needs a warning as to the dangerous results that may occur.

---

[28]*See Plante v. Hobart Corp.,* 771 F.2d 617, 620 (1st Cir. 1985) (potato grinder); *Kirsch v. Picker Int'l, Inc.,* 753 F.2d 670, 671–72 (8th Cir. 1985) (x-ray machine), *reh'g denied,* 760 F.2d 183 (8th Cir. 1985); *McPhail v. Municipality of Culebra,* 598 F.2d 603, 606–07 (1st Cir. 1979) (municipal power lines); *Hagans v. Oliver Mach. Co.,* 576 F.2d 97, 104 (5th Cir. 1978) (table saw); *Burton v. L.O. Smith Foundry Prods. Co.,* 529 F.2d 108, 111 (7th Cir. 1976) (product mixed with equal portion of kerosene); *Kerr v. Koemm,* 557 F. Supp. 283, 286–88 (S.D.N.Y. 1983) (tractor); *Greenway v. Peabody Int'l Corp.,* 294 S.E.2d 541, 546–47 (Ga. Ct. App. 1982) (dumpster); *Riordan v. Int'l Armament Corp.,* 477 N.E.2d 1293, 1296–97 (Ill. App. Ct. 1985) (handgun); *Maldonado v. Thomson Nat'l Press Co.,* 449 N.E.2d 1229, 1231 (Mass. App. Ct. 1983) (press), *rev. denied,* 452 N.E.2d 1158 (1983); *Erickson v. Monarch Indus., Inc.,* 347 N.W.2d 99, 108 (Neb. 1984) (electrical transformer); *Reed v. Pennwalt Corp.,* 591 P.2d 478, 481 (Wash. Ct. App. 1979) (caustic soda), *aff'd per curiam,* 604 P.2d 164 (Wash. 1979).

This analysis is in keeping with Wisconsin's long-standing adoption of sec. 343A of the Restatement of Torts.[29] Our courts have uniformly held that any owner of real property owes no duty to warn licensees, invitees or trespassers of dangerous conditions on the land which are "open, unconcealed and obvious."[30]

Thus, the trial court did not err in granting summary judgment against the common law negligence claims here because there were no material issues of fact, and the judge was correct in ruling as a matter of law that there was no duty to warn of the open and obvious dangerousness of the bullets in question.

Because there were no material issues of fact and the trial court correctly decided the legal issues involved in this case, Blount's affirmative defense of superseding cause need not be addressed by this court.

*By the Court.*—Judgment affirmed.

[29]Restatement (Second) of Torts sec. 343A (1964):

Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

[30]*Davenport v. Gillmore,* 146 Wis. 2d 498, 506–07, 431 N.W.2d 701, 705 (Ct. App. 1988); *Waters v. United States Fidelity & Guar. Co.,* 124 Wis. 2d 275, 281, 369 N.W.2d 755, 758 (Ct. App. 1985); *Treps v. City of Racine,* 73 Wis. 2d 611, 617–18, 243 N.W.2d 520, 522–23 (1976).