**Carl R. EICHSTEDT, Plaintiff,**

v.

**LAKEFIELD ARMS LTD., an Ontario corporation; Iver Johnson's Arms, Inc., an Arkansas business corporation, American Military Arms, Inc., an Arkansas business corporation; and Sporting Arms Insurance Limited, a foreign insurance corporation, Defendants,**

and

**Wisconsin Carpenters' Health Fund, Subrogated Defendant,**

and

**Dunham's Athleisure Corporation, Defendant and Third–Party Plaintiff,**

v.

**Daniel SIMONS, Outdoor Sports Headquarters, Inc., and Pacific Employers Insurance Company, Third–Party Defendants.**

Civ. A. No. 91–C–832.

United States District Court, E.D. Wisconsin.

April 22, 1994.

Gregory R. Wright, Montello, WI, for plaintiff.

Charles H. Bohl, Whyte Hirschboeck & Dudek, Milwaukee, WI, for defendant Lakefield Arms.

William R. Slate, Slate Law Offices, Markesan, WI, for defendant Daniel Simons.

### ORDER

TERENCE T. EVANS, Chief Judge.

This case concerns a truly tragic accident that occurred in Marquette, Wisconsin in the fall of 1989. The accident occurred when 17–year–old Daniel Simons—using a .22 caliber rifle—shot his friend, Carl Eichstedt, in the head.

Simons and Eichstedt, at the time of the incident, were high school classmates. On the day of the shooting, the two boys left school and went to Simons's home. When they arrived at the residence, Simons put a video tape in the VCR and Eichstedt sat down on the couch to watch.

When Simons looked out the window and noticed a squirrel, he picked up his .22 caliber rifle that had been left leaning up against a wall of the Simons's living room. The gun, a Trailblazer semi-automatic .22 caliber rifle manufactured by Lakefield Arms, had been purchased for David by his father in 1985. Young Simons was of the belief· that the weapon was not loaded.

At the time Simons picked up the firearm, the bolt was partially open and locked in the safety position. Simons then disengaged the gun's safety; which allowed the gun's bolt to close. He did this without first looking inside the action for the presence of a shell. Simons put the rifle to his shoulder and watched the squirrel through the rifle's scope.

Simons then swung the rifle around and aimed it at Carl's head, so that his face was in the cross hairs of the rifle's telescopic sight. Eichstedt was at this time seated on the couch approximately 15 feet away from Simons. Simons then pulled the trigger because he wanted to hear the firing pin "click." At the time he pulled the trigger, Simons expected the weapon to "click" because he knew that he had disengaged the weapon's safety. The gun discharged, and Eichstedt was shot in the area of his left eye, causing severe injuries.

On February 8, 1990, Daniel Simons was adjudicated delinquent by the circuit court for the County of Green Lake, Wisconsin, after pleading guilty to a charge of causing bodily harm to another by the negligent operation or handling of a dangerous weapon, contrary to Wisconsin law. *See* section 940.24 of the Wisconsin Statutes. No claim was made in connection with the juvenile court proceedings that the firearm was in any way defective. The shooting of young Eichstedt, Daniel Simons's friend, was an accident caused solely by young Simons.

Eichstedt has now brought this product liability negligence lawsuit against Lakefield Arms (and others), claiming that the rifle

was defective and unreasonably dangerous and that its defective condition caused him to be shot by his friend. I have diversity jurisdiction over the case and Wisconsin law applies. Lakefield has now moved for summary judgment. The motion is granted.

Daniel Simons and his father Douglas were avid hunters with substantial experience in firearm use and safety. Daniel Simons has been hunting since he was 12, using a variety of weapons owned by his father. When Daniel was 12, he and his father attended a hunter safety course provided by the Wisconsin Department of Natural Resources. The course consisted of several weeks of lectures and instruction on the safe use of firearms. To complete the course, students were required to pass a written test. Daniel Simons and his father both passed the course and received "hunter education" certificates.

As a part of this course, Daniel was taught that one never, ever, points a firearm at another person, regardless of one's belief that the weapon is not loaded. At his deposition, this is what Daniel said about the point:

Q: One of the things that they teach at the course is that you never, ever point a firearm at another individual, correct?

A: Right.

Q: And that's even if you're absolutely positive the gun or the firearm is unloaded, correct?

A: Yeah.

Q: And the purpose for that is because sometimes it may not be unloaded, correct?

A: Right.

Q: And you never want to take that chance, correct?

A: Right.

Q: And that's probably the one more important thing that they instill in that course, right?

A: Right.

In addition to learning this all-important safety rule in the DNR course, Douglas Simons instilled in his son the lesson that one never points a gun—loaded or unloaded—at another person.

Between August 1986, when the rifle was purchased, and the shooting of young Eichstedt, Daniel used the weapon on a regular basis for hunting squirrels and target shooting. Beginning with the time of its purchase, both Douglas and Daniel Simons were aware that the rifle would occasionally fail to eject a shell that had been fired. They also knew that the weapon would occasionally misfire. Neither Douglas Simons nor his son ever attempted to have these problems repaired by a gunsmith, and neither ever reported these problems—which appear to be minor— to the retailer or manufacturer of the rifle.

On October 8, 1989, 3 days prior to the shooting, Daniel, Eichstedt, and others went hunting for squirrels. On that day Daniel Simons was using the Trailblazer rifle.

When the boys were finished hunting, Simons says he attempted to empty the rifle by firing until he heard the firing pin "click," which he interpreted to mean that there were no longer any live shells in the clip. He then removed the empty clip and placed it in his pocket. Simons then pulled the bolt all the way back before sliding it forward to the locked safety position. Simons at this time did not look into the action to see if a live shell remained in the chamber.

When he returned home, Simons placed the uncased rifle up against the wall of the living room. Neither he nor his father touched the rifle until the shooting of Eichstedt 3 days later. I accept, for purposes of this motion, that all of these statements by Simons are true.

I have noted that the rifle occasionally failed to eject a spent shell casing. When this happened, the gun would jam. As I also noted, the weapon would occasionally misfire; that is, it would occasionally fail to discharge a live shell when the trigger was pressed. In this suit, Eichstedt tries to saddle Lakefield with a claim because there was nothing to suggest to Daniel or Douglas Simons that another problem existed—the gun might fail to manually extract all live cartridges. On this slim reed, the plaintiff rests his case.

Lakefield contends it is entitled to summary judgment, pursuant to Federal Rule of

Civil Procedure 56, dismissing all claims against it on the following grounds:

(1) The actions of Daniel Simons (a type of criminal action raising questions of gross negligence) constituted a superseding cause of Eichstedt's injuries;

(2) The rifle was not defective or unreasonably dangerous because the dangers and risk of injury were open and obvious.

■ In arguing against the motion for summary judgment, Eichstedt essentially contends that "jury issues" exist in the case. He is wrong. Simons's reckless action of knowingly pointing the weapon at Eichstedt and then pulling the trigger was a superseding cause of Eichstedt's injuries. Lakefield, if it did anything wrong (and it didn't), is off the hook.

■ No firearms manufacturer can prevent shootings by those who disregard the most basic rules of firearm safety. A necessary element of a claim for product liability is a showing by a plaintiff that the defective or unreasonably dangerous product was a cause of the plaintiff's injuries. *Dippel v. Sciano,* 37 Wis.2d 443, 460, 155 N.W.2d 55 (1967). Causation is also a necessary element of a negligence claim. *Hamed v. Milwaukee County,* 108 Wis.2d 257, 321 N.W.2d 199 (1982).

■ In Wisconsin, legal causation is composed of two elements, cause-in fact and proximate cause. *Morgan v. Pennsylvania General Insurance Co.,* 87 Wis.2d 723, 735, 275 N.W.2d 660 (1979). The test for whether certain conduct was a cause-in-fact of harm is whether that conduct was a substantial factor in producing the harm. *Clark v. Leisure Vehicles, Inc.,* 96 Wis.2d 607, 617, 292 N.W.2d 630 (1980). Cause-in-fact is generally a factual question for the trier of fact, while proximate cause is a legal issue to be determined by the court. *Hass v. Chicago and North Western Ry. Co.,* 48 Wis.2d 321, 326, 179 N.W.2d 885 (1970). An analysis of proximate cause requires an examination of various public policy considerations, one of which is a determination of whether the existence of a superseding cause should relieve an otherwise negligent tortfeasor of liability.

*Stewart v. Wulf,* 85 Wis.2d 461, 271 N.W.2d 79 (1978).

■ The ordinary rules of causation and defenses applicable to an action for negligence are equally applicable to an action grounded in strict liability. *Powers v. Hunt–Wesson Foods, Inc.,* 64 Wis.2d 532, 537, 219 N.W.2d 393 (1974). The defense of superseding cause, therefore, is available in an action brought under a theory of strict products liability. *Holifield v. Setco Industries, Inc.,* 42 Wis.2d 750, 759, 168 N.W.2d 177 (1969).

■ To be a superseding cause, the cause must first be an intervening force. *Diener v. Heritage Mutual Insurance Co.,* 37 Wis.2d 411, 417, 155 N.W.2d 37 (1967). An intervening force is a force which actively operates in producing harm to another after the actor's negligent act or omission has been committed. *Stewart,* 85 Wis.2d at 475, 271 N.W.2d 79. A superseding cause is an intervening force which relieves an actor from liability for harm which his negligence was a substantial factor in producing. *Stewart,* 85 Wis.2d at 475, 271 N.W.2d 79. Superseding cause is a means of relieving the first actor from liability where it would be wholly unreasonable for policy reasons to make the defendant answer in damages for his actions, even though those actions are considered a substantial factor in producing the injury. *Stewart,* 85 Wis.2d at 476, 271 N.W.2d 79. The application of the doctrine of superseding cause is a question of law to be decided by the court. *Stewart,* 85 Wis.2d at 475, 271 N.W.2d 79.

In *Stewart,* the court quoted an earlier Wisconsin case that explained the law of superseding cause as follows:

> Whenever a new cause ... intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action.

*Stewart*, 85 Wis.2d at 477, 271 N.W.2d 79 (quoting *Morey v. Lake Superior Terminal and Transfer Co.*, 125 Wis. 148, 155, 103 N.W. 271, 103 N.W. 271 (1905)).

■■■ Where the intervening act is intentionally tortious or criminal in nature, it is more likely to be considered a superseding cause. *Henry v. Merck and Company, Inc.*, 877 F.2d 1489 (10th Cir.1989).

As an aid to the application of the superseding cause doctrine, Wisconsin's courts have cited with approval *Restatement (Second) of Torts* § 448 (1965), which provides:

> The act of third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*See Olson v. Ratzel*, 89 Wis.2d 227, 253 n. 61, 278 N.W.2d 238 (Ct.App.1978).

There is much less reason to anticipate intentional misconduct than there is to anticipate negligence, since under ordinary circumstances it is reasonable to assume that no one will commit an act that will violate the criminal law. *See Restatement (Second) of Torts*, sec. 302 B, comment d (1965) (sec. 302 B cited in *Olson*, 89 Wis.2d at 251 n. 50, 278 N.W.2d 238).

Courts are properly reluctant to find that an intervening criminal act should have been foreseen by the original tortfeasor. *Marsh v. Barry*, 824 F.2d 1139, 1144 (D.C.Cir.1987). In ordinary circumstances, a criminal act breaks the chain of legal causation. *Marsh*, 824 F.2d at 1144.

Our case today is indistinguishable from *Raines v. Colt Industries, Inc.*, 757 F.Supp. 819 (E.D.Mich.1991). In that case, the victim was shot and killed by a friend who intentionally pointed a handgun at the decedent and pulled the trigger. The friend had desired to scare the decedent by "clicking" the gun, which he mistakenly believed to be unloaded. *Raines*, 757 F.Supp. at 822. Prior to pulling the trigger, the friend had removed the ammunition clip. He had mistakenly believed that removing the clip meant the weapon was "empty," when in fact a live shell remained in the firing chamber. *Raines*, 757 F.Supp. at 822. The plaintiff initiated an action against the manufacturer of the handgun, claiming that the gun was defectively manufactured because it lacked a safety device that would render it incapable of being fired after the clip had been removed. *Raines*, 757 F.Supp. at 823.

The court in *Raines* held that the actions of the shooter constituted a superseding cause of injury. The court said:

> In the instant case, Davis' [the shooter's] act of deliberately firing the gun was a superseding cause of the plaintiff's injuries.... In other words, it is not foreseeable that a person with Davis' prior experience handling and manipulating the gun would intentionally fire it at another person. Therefore, because of Davis' unforeseeable and superseding act, defendant's negligence, if any, was not the proximate cause of plaintiff's injuries.

*Raines*, 757 F.Supp. at 826.

Even if it is conceded for purposes of the present motion that the rifle in question was defective and unreasonably dangerous and was one cause-in-fact of the plaintiff's injuries, as a matter of law the intentional, reckless actions of Daniel Simons (actions that are crimes in Wisconsin) constituted a superseding cause.

■■■ In addition to this conclusion, I find that given the undisputed facts in this case, the weapon was not unreasonably dangerous. The Wisconsin Supreme Court has adopted comment i to the *Restatement (Second) of Torts* § 402 A, which provides in part:

> The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*Vincer v. Esther Williams All–Aluminum Swimming Pool Co.,* 69 Wis.2d 326, 332, 230 N.W.2d 794, 798 (1975). If the average consumer would anticipate the dangerous condition of the product and appreciate the risk of injury attendant to the use of the product, it cannot be said to be unreasonably dangerous. *Vincer,* 69 Wis.2d at 332, 230 N.W.2d at 798. Where a reasonable person in the position of the user of the product would recognize the dangerous condition and the risk of injury, the defect is open and obvious. *Griebler v. Doughboy Recreational,* 160 Wis.2d 547, 558, 466 N.W.2d 897 (1991). Guns, we know, are very dangerous. When they are pointed at someone and the trigger is pulled, bad things can happen. The manufacturers of guns are not liable in strict products liability for such open and obvious dangerous propensities. *Arbet v. Gussarson,* 66 Wis.2d 551, 225 N.W.2d 431 (1975).

In *Estate of Schilling v. Blount, Inc.,* 152 Wis.2d 608, 449 N.W.2d 56 (Ct.App.1989), the victim was shot in the head with a .22 caliber bullet discharged from the gun owned by his 15–year–old friend. While the two boys were in the friend's bedroom, the friend loaded a .22 pistol, cocked the hammer, and placed the cocked and loaded weapon on his bedroom cabinet. *Schilling,* 152 Wis.2d at 611, 449 N.W.2d 56. The weapon accidentally discharged, striking the victim in the head and causing severe injuries that eventually led to his death. *Schilling,* 152 Wis.2d at 611, 449 N.W.2d 56.

The victim's estate commenced a product liability action against various entities involved in the manufacture and sale of the gun and ammunition, including the manufacturer of the bullets, Blount, Inc. *Schilling,* 152 Wis.2d at 611, 449 N.W.2d 56.

The court of appeals upheld the trial court's grant of summary judgment in favor of the manufacturer, holding that the act of cocking the hammer of a loaded weapon constitutes an open and obvious danger. *Schilling,* 152 Wis.2d at 617, 449 N.W.2d 56. The court concluded that the ammunition manufactured by the defendant was not unreasonably dangerous because the average consumer would reasonably anticipate the dangers inherent in the product. *Id.* Due to the open and obvious nature of the dangers involved, the court concluded there arose no cause of action for strict liability against the defendant. *Id.*

An analogous situation is presented in this case. It is undisputed that Daniel Simons intentionally disengaged the safety on the rifle, aimed it at Carl Eichstedt's head, and pulled the trigger. Simons did not inspect the chamber of the rifle for the presence of a live shell prior to firing. A reasonable user of a .22 caliber rifle would appreciate the inherent dangers and risk of injury involved in this act. Indeed, Simons has admitted that he was fully aware of the dangers associated with this action prior to the time he shot Eichstedt.

The open and obvious nature of the dangers and risk associated with intentionally firing a weapon at another person's head are clear. Any reasonable person (especially an experienced handler of guns like Daniel Simons) would have recognized the dangers involved in the act. The weapon manufactured by the defendant therefore was not dangerous to an extent that could not be contemplated by a reasonable user of the rifle. The open and obvious nature of the danger, standing alone, entitles Lakefield to summary judgment dismissing the complaint.

The moral of this story is simple. One should never point a gun at another, thinking it is unloaded. And one should never compound the felony by pulling the trigger. When these cardinal rules are violated, the victim has an airtight negligence suit against the shooter. He has no case against the gun maker. Because all claims in this case are dependent on a liability finding against Lakefield—and in light of the stipulation and order I signed as to other parties on November 9, 1993—this case is DISMISSED.

SO ORDERED.