979 P.2d 1165

**Tory T. BROMLEY, Plaintiff–Appellant,**

v.

**Ronald K. GAREY, Defendant–Respondent.**

No. 24234.

Supreme Court of Idaho, Idaho Falls, October 1998 Term.

May 26, 1999.

Peterson, Parkinson & Dewey, Idaho Falls, for appellant. John C. Dewey argued.

Thomsen & Stephens, P.A., Idaho Falls, for respondent. T. Jason Wood argued.

**SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED MARCH 29, 1999, IS HEREBY WITHDRAWN.**

WALTERS, Justice.

This is an appeal from a summary judgment granted in favor of Ronald Garey dismissing an action brought by Tory Bromley, who was injured in a hunting accident involving a shotgun owned by Garey. We reverse the order granting summary judgment and remand the case for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

In September 1995, Bromley and Dave Sholder went hunting with two shotguns that Sholder had borrowed from his uncle and Ronald Garey. Both Bromley and Sholder used Garey's shotgun, and both observed that it frequently misfired and sometimes even fired late, yet they continued to use it. On the way home, they stopped and shot at some doves by the side of the road, but left in a hurry to avoid trouble for firing near houses that were beside the road. Sholder simply wrapped the two loaded shotguns in a blanket and placed them in the bed of the pickup.

After driving a short distance, they decided it might be safer to unload the shotguns. They stopped, and Bromley got out on the driver's side while Sholder got into the back of the pickup. As Sholder picked up the bundle containing the shotguns, Garey's shotgun fell onto the bed of the pickup and discharged, striking Bromley.

Shortly after the accident, an agent from Garey's insurance company took the shotgun to Jon Aikin of Aikin's Sport Shop for an examination. Aikin observed that when the bolt was slammed shut or when the shotgun was hit on its butt or on the sides, it would fire ninety percent of the time. Aikin did not disassemble the shotgun or otherwise attempt to determine the source of the problem, but he suggested several possible reasons for his observations. Aikin returned the shotgun to Garey with a note that the shotgun was inoperable and should not be used.

Eleven months later, Bromley requested that the shotgun be examined by Robert Stofey. Stofey, the Range Master for the Oxnard Police Department, performed an examination similar to Aikin's, but with markedly different results. The gun was clean and in good condition, and he was unable to reproduce the problems observed by Aikin.

The gun would fire only when the trigger was pulled; it would not fire when dropped from heights up to approximately twelve inches. According to Stofey, there was no indication of any misfiring or mechanical malfunction.

Bromley sued both Sholder and Garey for his injuries. Garey filed a motion for summary judgment alleging that he owed no duty to Bromley. Garey subsequently filed a second motion for summary judgment alleging intervening cause. In response to Garey's motions for summary judgment, Bromley submitted the depositions of Bromley, Sholder and Aikin in order to show a genuine issue of material fact regarding Garey's duty. Bromley also argued that Stofey could not duplicate Aikin's observations because Garey had repaired the shotgun and destroyed any evidence of a defect. Bromley argued that he was entitled to a spoliation inference, based on the alleged destruction of evidence, that Garey knew about the defect when he loaned the shotgun to Sholder and consequently had a duty not to lend the shotgun. Garey filed a motion to strike the expert testimony of Jon Aikin. On December 23, 1996, the court heard oral argument on both summary judgment motions and Garey's motion to strike.

The district court granted Garey's motion to strike the expert testimony of Jon Aikin. The district court also granted Garey's first motion for summary judgment finding that there was no admissible evidence that Garey knew of a condition or defect that would cause the shotgun to fire when dropped. The court determined that a reasonable jury might infer that Garey knew the gun would misfire or fire late. However, the court determined that the accident occurred when the shotgun was dropped, not because it misfired or fired late. Without knowledge that the shotgun had a tendency to fire when dropped, the court concluded that Garey did not have a duty to warn Sholder or Bromley about the shotgun. Having granted Garey's first motion for summary judgment, the court specifically declined to rule on Garey's second summary judgment motion.

After Sholder filed bankruptcy, pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure Bromley appealed the summary judgment dismissing his claim against Garey. Because the district court specifically declined to rule on Garey's second summary judgment motion, this Court will not consider issues raised in Garey's second motion. Thus, Bromley's appeal raises the following issues:

1) Did the court abuse its discretion by striking the expert testimony of Jon Aikin?

2) Did the court improperly refuse to apply the doctrine of spoliation?

3) Did the court improperly find that Bromley had not raised a genuine issue of material fact with regard to a duty owed by Garey to Bromley?

## I.

## STANDARD OF REVIEW

Summary judgment shall be granted where the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Friel v. Boise City Housing Authority*, 126 Idaho 484, 887 P.2d 29 (1994). The record must be liberally construed in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *Student Loan Fund Of Idaho, Inc. v. Duerner*, 131 Idaho 45, 49, 951 P.2d 1272, 1276 (1997). The burden of proving the absence of a genuine issue of material fact rests at all times on the moving party. *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994). Where the non-moving party will bear the burden of proof at trial, the moving party's burden may be satisfied by showing the absence of material fact with regard to any essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The absence of a genuine issue of fact with regard to an essential element of the plaintiff's claim renders any other potential issues of fact irrelevant. Once the absence of sufficient evidence on an element has been shown, the burden shifts to the non-moving party to establish a genuine issue of material fact. The non-moving party cannot merely rely upon its pleadings, but must produce

affidavits, depositions, or other evidence establishing an issue of material fact. *R.G. Nelson, A.I.A. v. Steer,* 118 Idaho 409, 410, 797 P.2d 117, 118 (1990). The non-moving party need not submit evidence on every element upon which it will bear the burden at trial, but only those elements about which the moving party successfully carried its burden. *Thomson v. Idaho Ins. Agency, Inc.* 126 Idaho 527, 887 P.2d 1034 (1995).

■ Bromley's claim against Garey is based upon negligence. Consequently, at trial Bromley would bear the burden of proving each of the following: (1) a duty, recognized by law, requiring Garey to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between Garey's conduct and Bromley's injury; and (4) actual loss or damage. *Black Canyon Racquetball v. First Nat'l Bank, N.A.,* 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991). Garey's first summary judgment motion challenged only whether Garey owed a duty to Bromley. Consequently, the question before this Court is whether Bromley has submitted sufficient admissible evidence to create a genuine issue of material fact regarding Garey's duty to Bromley. The general standard for determining the existence of a genuine issue of material fact is the same as the standard employed on a directed verdict. The non-moving party must produce evidence upon which a reasonable jury could rely. *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 452 P.2d 362 (1969).

■ Evidence presented in support of or in opposition to a motion for summary judgment must be admissible. *Hecla Min. Co. v. Star–Morning Min. Co.,* 122 Idaho 778, 785, 839 P.2d 1192, 1199 (1992). This threshold question of admissibility of evidence must be decided "before proceeding to the ultimate issue, whether summary judgment is appropriate." *Ryan v. Beisner,* 123 Idaho 42, 45, 844 P.2d 24, 27 (Ct.App.1992). The general rule that all inferences are drawn in favor of the non-moving party does not apply to the initial question of admissibility. *Hecla Min. Co., supra.*

## II.

## THE COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO ALLOW AIKIN'S EXPERT TESTIMONY.

In response to Garey's motions for summary judgment, Bromley submitted the deposition of Jon L. Aikin. Garey moved to strike Aikin's testimony. The district court granted Garey's motion with respect to Aikin's expert opinions, but allowed Aikin's testimony describing his actual observations. The court found that Aikin probably qualified as a shotgun repair expert, however it concluded that his opinions were speculative and lacked the necessary factual foundation. We agree.

■ The admission of expert testimony is within the sound discretion of the trial court. *Burgess v. Salmon River Canal Co., Ltd.,* 127 Idaho 565, 903 P.2d 730 (1995). Expert opinion must be based upon a proper factual foundation. "Expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict, and therefore is inadmissible as evidence under Rule 702." *Ryan* at 46, 844 P.2d at 28. Expert opinion that merely suggests possibilities would only invite conjecture and may be properly excluded. *Elce v. State,* 110 Idaho 361, 716 P.2d 505 (1986).

■ Aikin examined the shotgun shortly after the accident. He observed that the shotgun fired when the bolt was slammed shut and when the shotgun was hit on the butt or on the sides, but never took the gun apart or performed anything other than an external examination. Based on his observations, Aikin stated several possible reasons for the malfunction: a bad shear pin, a loose screw, a bad spring, flakes of unburned powder, a weed or stick, or "countless things." Aikin never indicated which of these possibilities he thought had occurred or even said which was most probable. Aikin merely recited several things that would be consistent with his observations.

Given the lack of an internal examination and the purely speculative nature of Aikin's testimony, the district court did not abuse its

discretion by refusing to admit Aikin's opinions.

## III.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO APPLY THE DOCTRINE OF SPOLIATION.

Bromley contends that he was denied the opportunity to discover the precise nature of the shotgun's defective condition because Garey altered the shotgun and destroyed the evidence. Under the doctrine of spoliation, Bromley argues that he is entitled to an inference that the evidence Garey destroyed by altering the gun was unfavorable to Garey's case. The district court refused to apply the doctrine of spoliation because it found no admissible evidence that the gun had been altered.

■■■■ The evidentiary doctrine of spoliation recognizes it is unlikely that a party will destroy favorable evidence. Thus, the doctrine of spoliation provides that when a party with a duty to preserve evidence intentionally destroys it, an inference arises that the destroyed evidence was unfavorable to that party. *Stuart v. State*, 127 Idaho 806, 907 P.2d 783 (1995). Spoliation is a rule of evidence applicable at the discretion of the trial court. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir.1995).

■■■■ In this case, spoliation is not applicable because Bromley has failed to show that any evidence was destroyed. To invoke spoliation, Bromley must show that Garey altered the shotgun and intentionally destroyed the evidence that would have enabled Bromley to show why it was malfunctioning. Because of the nature of Bromley's claims against Garey, the precise reason for the malfunction is relevant only to the extent it might prove that the defect existed when Garey last used the shotgun and that he would have known about it. Therefore, Bromley seeks an inference that the defect was a longstanding problem that Garey

would have noticed when he used the shotgun two or three months before the accident. Bromley has submitted no direct evidence that the gun was altered, and Garey denied any alterations or repairs. Bromley relies solely upon the fact that Aikin observed a malfunction, and after eleven months in Garey's possession the gun did not malfunction when examined by Stofey.[1] This argument assumes exactly what Bromley seeks to show by inference: that the defect was a longstanding defect that would not simply appear, and would not disappear unless the gun was repaired. This circular reasoning cannot support a spoliation inference. The absence of evidence that would exist if Bromley's theory of the case is correct, does not by itself lead to an inference that the evidence existed earlier and was destroyed. Bromley has failed to sufficiently prove that any evidence was destroyed.

The evidence necessary to show whether the shotgun was altered or repaired was available to Bromley. The shotgun was not lost and it was not destroyed. *See, Williams v. Briggs*, 62 F.3d 703 (5th Cir.1995). Bromley's own expert, Aikin, testified that it would be a simple matter to determine whether any of the parts of the shotgun had been replaced. He just testified that he would not be the best person to make the determination.

Without any evidence that Garey replaced parts or otherwise repaired the shotgun to keep Bromley from discovering its defective condition, the district court did not abuse its discretion by refusing Bromley's request for a spoliation inference.

## IV.

## THE DISTRICT COURT IMPROPERLY FOUND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING GAREY'S DUTY TO BROMLEY.

■■■■ In general, each person "owes the duty to every person in our society to use reasonable care to avoid injury to the other

---

1. Jon Aikin's testimony can be read to support Bromley's argument, however, his expert opinions were properly excluded.

person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Gibson v. Hardy,* 109 Idaho 247, 250, 706 P.2d 1358, 1361 (Ct.App.1985). More specifically, this Court has held that the supplier of a chattel for another's use has a duty to supply a proper and safe implement. *Metz v. Haskell,* 91 Idaho 160, 161–2, 417 P.2d 898, 899–900 (1966). This duty extends to all those who may reasonably be expected to use the chattel or be injured by it. The supplier need not take affirmative steps to investigate and ensure that the chattel is safe. Rather, the supplier's duty is dictated by his or her knowledge of any conditions making the chattel dangerous for its intended or reasonably foreseeable uses.

Section 388 of the Restatement (Second) of Torts states that:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388. The first illustration under section 388 states:

A sells to B a shotgun, knowing that B intends to give it to his son C as a birthday present. A knows, but does not tell B, that the trigger mechanism of the gun is so defective that it is likely to be discharged by a slight jolt. B gives the gun to C. While C is using the gun it is discharged, and C is injured, by reason of the defective mechanism. A is subject to liability to C.

Section 388, Ill 1. In *Robinson v. Williamsen Idaho Equip. Co.,* 94 Idaho 819, 498 P.2d 1292 (1972), this Court applied the test from section 388 in the context of the distributor of a defective scissor hoist. We now apply the same test for gratuitous lenders of chattels. Thus, if Garey knew that there was a problem with the shotgun's firing mechanism, he had a duty to warn Sholder of the problem.

The district court found that although Garey may have known that the gun misfired and fired late, he had no duty to warn Sholder and Bromley not to point a loaded gun at another person and drop it. The court stated:

A reasonable jury viewing the facts in a light most favorable to Bromley could find that Garey breached a duty to warn Sholder that the shotgun fired late if Garey was indeed aware of such a condition. Furthermore, a reasonable jury could infer from Bromley's and Sholder's testimony that the shotgun's firing late was known to Garey at the time he delivered possession to Sholder.

However, there is no evidence from which a reasonable jury could find that Garey's shotgun would fire when dropped. Assuming arguendo that Garey did warn Sholder that the shotgun had a tendency to fire late after the trigger was pulled, such a warning would not have prevented the accident in question. Furthermore, such a warning from Garey would not have prevented Bromley and Sholder from driving around with a loaded shotgun, wrapped in a blanket, in the back of their pickup and then dropping the shotgun onto the bed of the pickup while Bromley was standing in front of the barrel. To expect Garey to foresee and to warn Sholder, an adult, experienced, licensed hunter, not to point a loaded shotgun at his hunting companion and then drop it, is akin to requiring a car owner, who lends his car to a licensed, adult driver, to warn the borrower not to run over pedestrians who happen to be crossing the street. It is unforeseeable for Garey to expect a hunter to stand in front of, and thus warn Sholder to tell his companion not to stand in front of a loaded shotgun. Such a situation is directly anal-

ogous to the facts of *Schilling,* in which the Wisconsin Court held that it was unnecessary to require a manufacturer of bullets to warn a *fifteen year old* of the obvious dangers inherent in pointing a loaded weapon at himself.

The court finds there are no admissible facts in the present record to establish directly or by permissible inference that Garey caused or knew of a condition that would cause the shotgun to fire when dropped as of the time he delivered it to Sholder.

. . .

Garey's first motion for summary judgment should ... be granted because of Bromley's failure to present admissible material facts to establish that Garey owed Bromley a duty to warn him or Sholder of the inherent and obvious dangers of standing in front of a loaded shotgun, dropping a loaded shotgun, or pointing a loaded shotgun at another person, or that Garey breached a duty to warn Sholder that the shotgun misfired or fired late, which Sholder discovered by his own inspection before the accident.

▄▄▄ We agree with the district court that a reasonable jury could find that Garey knew the gun had a tendency to misfire and fire late even without the assistance of expert testimony or a spoliation instruction. However we conclude the court improperly found this to be insufficient to create a material fact with regard to Garey's duty to Bromley. The problem with the district court's conclusion is that it mischaracterizes Garey's duty. Certainly, Garey had no duty to warn the hunters not to stand in front of the shotgun or not to point it at someone and drop it. But, he did have a duty to disclose any information regarding a dangerous malfunction. Under the Restatement test, as applied by *Robinson,* if Garey knew that the shotgun he loaned to Sholder had a tendency to misfire, fire late, and fire when smacked on the butt, he had a duty to Sholder and other foreseeable users to disclose this information, unless the defect was obvious or actually known to Sholder. The district court's distinction between knowing that the gun misfires and fires late and knowing that the gun

might fire when dropped is not tenable. This is precisely the type of accident that one might foresee when lending a shotgun with a defective firing mechanism.

The district court also relied upon an exception for known or obvious dangers found in *Robinson.* In *Robinson,* the Court noted that "[o]f course, no warning need be given, regardless of the nature of the supplier-user relationship, if the danger is obvious or actually known to the user." *Id.* at 827, 498 P.2d at 1300. The district court placed particular emphasis on *Schilling v. Blount,* 152 Wis.2d 608, 449 N.W.2d 56 (Ct.App.1989). In *Schilling,* the court considered a suit brought by the father of a fifteen-year-old boy against a bullet manufacturer. The boy had shot himself after he loaded and cocked the pistol then tried to put it down. The court affirmed a summary judgment in favor of the bullet manufacturer stating: "[b]ecause the danger involved in handling weapons loaded with bullets is so patent, open and obvious, no reasonable person needs a warning as to the dangerous results that may occur." *Id.* at 61.

▄▄▄ The district court's reliance upon *Schilling* is misplaced. In *Schilling,* the court found no duty to warn of the obvious dangers associated with handling a loaded weapon. *Schilling* speaks only to the ordinary dangers associated with the use of guns. This case implicates the duty to disclose information about a hidden defect that would make the gun far more dangerous than would be expected from a properly functioning shotgun. The fact that Sholder and Bromley eventually discovered, by using the gun, that it malfunctioned does not discharge Garey's duty. They could just as easily have "discovered" the defect by shooting themselves, or someone else, the first time they tried to use the gun. The question of eventual discovery is not relevant to the initial question of whether the defect was actually known or obvious. Garey's duty must be judged at the time he loaned the gun to Bromley; the duty existed and was breached at that point, or not at all. There is no indication that it was obvious to someone who had never used the gun that it malfunctioned, or that either Sholder or Bromley knew that

it malfunctioned at the time that the gun was loaned.

The hunters' eventual discovery of any undisclosed facts known to Garey at the time he loaned the shotgun bears on the question of causation rather than duty. And ultimately, Bromley must show that Garey's breach, if any, caused the accident. However, we do not address the question of causation. Garey did not raise any challenges to causation in his first summary judgment motion, and the district court specifically declined to rule on Garey's second summary judgment motion.

We conclude that Bromley has submitted sufficient evidence to create a genuine issue of material fact as to whether Garey knew of the shotgun's defective condition when he loaned it to Sholder. Because Garey had a duty to warn of the defective condition if he knew about it, we hold that Bromley has raised a genuine issue of material fact with regard to Garey's first motion for summary judgment.

## CONCLUSION

The order granting summary judgment is reversed. The case is remanded for further proceedings. Costs to Bromley; no attorney fees are awarded.

Chief Justice TROUT, Justice SILAK and Justice JOHNSON, PRO TEM, concur.

Justice SCHROEDER, dissenting.

I respectfully dissent from the decision of the Court. The Court has quoted relevant portions of the district court opinion but rejects the reasoning within that opinion. The reasoning of the district court should be accepted. A few additional comments are also in order.

First, there is no evidence that Garey knew the shotgun would discharge when dropped. Actually, there is no direct evidence that the shotgun itself was defective. Garey has sworn that he knew of no defect. The possibility that the shotgun was defective comes from the evidence that it misfired or fired late when Sholder and Bromley used it and from the examination by Mr. Aikin who observed that the shotgun fired when

the bolt was slammed shut or when the shotgun was hit on its butt or on the sides. This result could not be duplicated in subsequent testing. The Court could draw the inference that the shotgun was defective from the evidence of misfiring or late firing, but that is not a necessary conclusion. It may seem logical to conclude that the problems were a consequence of a defect in the shotgun, but there is no expert opinion to establish such a conclusion. The Court has affirmed the exclusion of Mr. Aikin's opinions on the basis that they were speculative and lacked the necessary factual foundation. The Court does note, however, that Mr. Aikin recited several things that would be consistent with his observations. Some of those have nothing to do with a defect in the shotgun such as flakes of unburned powder, a weed or stick, or "countless things." The Court makes the assumption that the misfiring or late firing are related to the shotgun discharging when dropped. There is nothing in the record to support that assumption. The alternative assumption is that Garey had knowledge of another defect that caused the shotgun to discharge when dropped. There is no support for that assumption.

Assuming that the misfiring was the result of a defect in the shotgun, not something else, and assuming that Garey knew of the defect despite his sworn statement that he did not, the question then becomes what was his duty? Apparently his duty was to warn Sholder and Bromley not to drop a loaded shotgun that they observed had misfired or fired late.

Assuming that Garey knew of an unidentified defect in the shotgun, it is clear that Bromley had the same knowledge. He and Sholder used the shotgun. According to them, it misfired or fired late. Despite this knowledge, they continued to use it, and they left it loaded in the pickup knowing the danger. They knew as much at that time as Garey could know. They had control of the shotgun and could take the steps necessary to protect themselves. Those steps were simple. If it was misfiring, do not use it. Do not leave it loaded in the pickup. Do not drop it. The district court properly relied upon *Robinson v. Williamsen Idaho Equip-*

*ment Co.*, 94 Idaho 819, 827, 498 P.2d 1292, 1300 (1972), for the proposition that "no warning need be given, regardless of the nature of the supplier-user relationship, if the danger is obvious or actually known to [the] user." Any duty that Garey had to warn was extinguished and irrelevant because of the knowledge Bromley possessed.

It is also clear that any failure to warn did not cause this event. The unfortunate accident was caused by the continued use and unsafe handling of the shotgun. Reserving this issue simply prolongs the expense of litigation. The issue has been presented to this Court in the respondent's brief, and the appellant did not file a reply brief. The result is apparent.

The question of negligence is almost universally left to a jury. However, there are cases where the facts are so clear that the court can say no reasonable jury could return a verdict in favor of the plaintiff either because the defendant was not negligent or the negligence of the plaintiff was equal to or exceeded that of the defendant. Reading the facts in the light most favorable to Bromley, this is one of those cases. If this case goes to trial it should not survive a motion for directed verdict or a motion for judgment notwithstanding the verdict if a sympathetic jury finds in favor of Bromley. Bromley had control of the instrumentality that caused his injury, and he was aware of the difficulty with the shotgun. Giving the evidence all the weight possible in Bromley's favor, the most that can be said is that his negligence was equal to or greater than any negligence by Garey. This case should be put to rest without the additional expense of legal representation and the waste of judicial and jury time.