844 P.2d 24

**Edward G. RYAN, O.D.,**
**Plaintiff–Appellant,**

**v.**

**Karl BEISNER, Defendant–Respondent.**

**STATE FARM FIRE & CASUALTY**
**COMPANY, Plaintiff–Appellant,**

**v.**

**Karl BEISNER, Defendant–Appellant.**

**No. 19125.**

Court of Appeals of Idaho.

Dec. 14, 1992.

Quane, Smith, Howard & Hull, Boise, for appellant. John P. Howard, argued.

Thomasen & Stephens, Idaho Falls, for respondent. Alan C. Stephens, argued.

SILAK, Judge.

On the night of October 7, 1988, the office building of Dr. Edward G. Ryan, an optometrist, caught fire and was destroyed. Ryan and his insurer, State Farm Fire & Casualty Company,[1] sued Karl Beisner, an electrician, claiming that the fire started as a result of Beisner's negligence as he installed "trac" lighting in the building earlier that day. Beisner moved for summary judgment, asserting that there was no competent evidence to show that the fire was caused by any negligent act on his part. The district court granted Beisner's motion for summary judgment, and Ryan appeals. Based on the facts and reasoning set forth below, we vacate the judgment and remand this case to the district court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In 1988 Ryan owned a single-story office building where he practiced optometry. Ryan's building was two rooms wide and six rooms deep, with a hallway down the middle. On October 7, 1988, Beisner installed a series of trac lights in the ceiling of Ryan's frame room,[2] which was located at the front of the building. Beisner connected the trac lights to an existing electrical circuit to which the room's former light fixture had been connected. After Beisner installed the trac lights, Jan Chapman, one of Ryan's employees, went into the frame room to see how the new lights worked, and saw that they were working fine. Chapman, the only employee in the building during the afternoon, closed the office at 5 p.m. Sometime shortly thereafter, Mary Cenarrusa, another of Ryan's employees, arrived and spent approximately an hour cleaning the offices. All the lights and appliances in the building were turned

off by Ryan's employees before closing the office for the weekend. Neither Beisner, Chapman, nor Cenarrusa noticed any problem with the new lighting; they smelled no smoke, the lights did not flicker, dim, or go out, and the circuit breakers did not trip.

Shortly before midnight on that same day, a fire broke out in Ryan's building, destroying the building. The fire scene was subsequently investigated by the state fire inspector's office, city fire officials, and Charles Dodson, the fire investigator hired by State Farm. Sometime later, Ryan and State Farm commenced this action against Beisner, alleging that the fire was caused by Beisner's negligence.

After the complaint was filed, the parties deposed a number of lay and expert witnesses. Beisner then moved for summary judgment, asserting that Ryan's allegation that he caused the fire was factually unsupported and speculative, and therefore incompetent to create a genuine issue of causation. To make a prima facie showing of causation in opposition to Beisner's motion, Ryan presented the expert opinion testimony of Dodson. Dodson testified at his deposition that he was able to identify an area in the ceiling of the lab room, two rooms (about thirty-five feet) away from where Beisner had worked in the frame room, as the area where the fire originated. Because the fire appeared to have ignited in an area of the ceiling where numerous wires had crossed, and because he could find no other explanation, Dodson concluded that the fire was of electrical origin. Dodson also concluded that because the circuit which Beisner had worked on in the frame room appeared to have run through the area where the fire started, Beisner must have done something while he worked on that circuit earlier in the day to cause the fire to ignite later that evening.

Dodson was unable to say specifically what it was that Beisner did to cause the fire, but he proffered two possibilities of how Beisner, who finished working on the circuit in the frame room at about 4 p.m.,

---

1. We will generally refer to the plaintiffs collectively as "Ryan."

2. The room where Ryan displayed an assortment of frames for eyeglasses.

could have caused the fire to ignite in the ceiling of the lab room about thirty-five feet away and seven and one-half hours later. Dodson first theorized that Beisner could have caused the fire by pulling on the wires in the frame room, which might have damaged or stretched those wires at a point above the lab room, causing heat to build up and ignite the surrounding wood or insulation. Dodson's other theory was that Beisner could have started the fire by overloading the circuit, which overload might have caused heat to build up and ignite the fire at a point in the ceiling over the lab room.

In support of his motion for summary judgment, Beisner pointed to Dodson's deposition testimony to show that Dodson had been unable to find any evidence that the fire actually started because Ryan damaged or overloaded the wires of the circuit he had worked on; indeed, that Dodson could not even find any evidence that the wires had been damaged. Beisner also pointed to a portion of Dodson's deposition where Dodson testified that during his investigation he found a shorted wire in the area of origin which he believed was causally related to the fire. Dodson, however, was unable to show that this wire, which—unlike the wires Beisner had worked on—was installed in conduit, had any relation to the circuit which Beisner had worked on. With respect to his theory that Beisner might have caused the fire by overloading the circuit, Beisner presented portions of Dodson's deposition in which Dodson admitted that he did not know how much load Beisner had put on the circuit, and in which he stated, "I have no evidence that that (circuit overload) is exactly the cause, but it's certainly one of the things that can be considered." Beisner asserted that because there was no evidence, either circumstantial or direct, that Beisner damaged the wires which he worked on, or that those wires caused the fire to start, Dodson could only speculate that the fire's ignition source was wiring damaged by Beisner. Beisner argued that at the least, in light of the uncontradicted testimony of other experts, Dodson's theories of causation were factually impossible, and at the most they

were merely remote possibilities unsupported by fact. Finally, Beisner argued to the trial court that under I.R.C.P. 56(e) affidavits and depositions submitted in support of or opposition to a motion for summary judgment must set forth such facts as would be admissible in evidence, and based on the excerpts of Dodson's own deposition, his conclusion that Beisner caused the fire was speculative and inadmissible, and therefore incompetent to create a genuine issue of material fact.

After receiving and considering the briefs, affidavits, depositions, and oral argument submitted by the parties, the district court granted Beisner's motion, stating that "there's no way that the plaintiff in this case can show causation, whatever theory we're talking about, by a preponderance of the evidence to entitle it, as a matter of law, to go to the jury." Ryan has appealed from the summary judgment granted to Beisner. Based on the following analysis, we vacate and remand.

## II. ANALYSIS

On appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by trial courts in ruling on motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). In ruling upon a motion for summary judgment, all disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party. *Bonz*, 119 Idaho at 541, 808 P.2d at 878. The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 868, 452 P.2d 362, 365 (1969). Once the moving party has properly supported the motion for summary judgment with affidavits, admissions or depositions,

it is incumbent on the nonmoving party to present opposing evidence through depositions, discovery responses and affidavits sufficient to create a genuine issue for trial. I.R.C.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Petricevich,* 92 Idaho at 868, 452 P.2d at 365. To withstand a motion for summary judgment, the nonmoving party's case must consist of more than speculation, it must create a genuine issue regarding a material fact. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). A mere scintilla of evidence is not enough to create a genuine issue. *Id.* If the evidence presented by the nonmoving party fails to raise a genuine issue for trial, summary judgment shall be entered against that party. I.R.C.P. 56(e).

In considering the evidence presented in support of or opposition to a motion for summary judgment "a court will consider only that material contained in affidavits or depositions which is based upon personal knowledge and which would be admissible at trial." *Petricevich,* 92 Idaho at 869, 452 P.2d at 366; I.R.C.P. 56(e). In *Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 839 P.2d 1192 (1992), our Supreme Court stated that in ruling upon a motion for summary judgment the admissibility of the evidence contained in affidavits and depositions in support of or in opposition to the motion is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial. *Hecla,* 122 Idaho at 778, 839 P.2d at 1198. A district court may exclude or not consider evidence offered by a party on its own motion, *Hecla,* 122 Idaho at 778, 839 P.2d at 1196–97, or pursuant to an objection by one of the parties. However, "some form of objection in the trial court is necessary to preserve the right to challenge on appeal the admission or consideration of evidence, unless the error is plain or fundamental." *Hecla,* 122 Idaho at 778, 839 P.2d at 1199. Thus, if the admissibility of evidence presented in support of or in opposition to a motion for summary judgment is raised by the court on its own motion or on objection by one of the parties, the court must first make a threshold determination as to the admissibility of the evidence before proceeding to the ultimate issue, whether summary judgment is appropriate. Pursuant to *Hecla,* if the evidence would be inadmissible at trial, the court should not consider the evidence in ruling on the motion for summary judgment.

In this case, Beisner argued to the district court that Dodson's testimony was speculative and inadmissible as evidence. At the hearing on the motion for summary judgment, Beisner's counsel stated:

> We believe that the evidence that the plaintiffs have been able to muster is basically speculation. And if we tried this case and it got to this point before the jury, I'm convinced this court would not allow it to go to the jury; that it would be purely speculative....

With respect to the affidavit submitted by Dodson, Beisner's counsel asserted:

> The rule requires that affidavits in opposition to summary judgment be in such a form that they would present evidence that would be admissible at trial. This is a totally conclusory affidavit, doesn't give any of the bases upon which he reaches the conclusion.

At the conclusion of his initial argument at the hearing on the motion, Beisner's counsel stated, "It's all speculation. And we would ask the court to rule at this time that in fact it is speculation and grant our summary judgment." Beisner has reasserted these arguments on appeal.

In granting summary judgment against Ryan, the district court did not rule on Beisner's assertion that Dodson's testimony was inadmissible as evidence, but simply ruled on the ultimate issue, concluding that Beisner was entitled to judgment as a matter of law because Ryan had failed to present sufficient evidence of causation to let the case go to a jury. We do not fault the district court for failing to make the threshold determination whether Ryan's evidence of causation was even admissible,

because when the district court made its ruling it did not have the benefit of our Supreme Court's recent decision in *Hecla.* However, under *Hecla* it has become clear that when evidence presented in opposition to a motion for summary is challenged as being inadmissible, the trial court must determine the admissibility of the evidence before ruling on the motion. The district court did not make this determination, and we cannot do so for the first time on appeal.

■■■■ Under I.R.E. 104(a), the admissibility of Dodson's expert opinion testimony is to be determined by the district court.[3] The evidentiary rules which govern the court's determination of admissibility include I.R.E. 702, 703 and 403. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Thus, under Rule 702 qualified experts may testify in the form of an opinion only if their specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. Because a verdict cannot rest on speculation or conjecture, *Petersen v. Parry,* 92 Idaho 647, 652, 448 P.2d 653, 658 (1968), expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict, and therefore is inadmissible as evidence under Rule 702.

Other courts have also held that experts may not give "net" or conclusory opinions, but only opinions which are substantiated by facts in evidence. *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 806 (9th Cir. 1988) (district court properly excluded opinion testimony of expert who did not back up his opinion with specific facts, rather his opinion was speculative, resting on unsup-

ported assumptions); *Theonnes v. Hazen,* 37 Wash.App. 644, 681 P.2d 1284 (1984) (opinion of an expert must be based on facts, and an opinion which is simply a conclusion or is based on an assumption is not evidence which will take the case to the jury).

> [The admissibility of expert opinion testimony] depends on the expert's ability to explain pertinent scientific principles and to apply those principles to the formulation of his or her opinion. Thus, the key to admission of the opinion is the validity of the expert's reasoning and methodology. In resolving these issues, the trial court should not substitute its judgment for that of the relevant scientific community. The court's function is to distinguish scientifically sound reasoning from that of the self-validating expert, who uses scientific terminology to present unsubstantiated personal beliefs.

*Landrigan v. Celotex Corp.,* 127 N.J. 404, 605 A.2d 1079, 1084 (1992).

■ Rule 703 provides another foundational requirement for the admission of expert opinion testimony. This Rule provides the following with respect to the facts or data upon which an expert's opinion is based:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Thus, under Rule 703, an expert's opinion is inadmissible if it is not based on the type of facts and data "reasonably relied upon by experts in the particular field in forming opinions upon the subject."

Finally, I.R.E. 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or mis-

---

**3.** It is important to note that even though this matter was before the district court on a motion for summary judgment, the rule that facts are to be liberally construed in favor of the nonmoving party does not apply in determining the threshold issue of admissibility of evidence.

leading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

An expert's opinion which is unsubstantiated by facts in the record, but which is speculative or conclusory, has little or no probative value, and therefore may be excluded because its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." I.R.E. 403; *McGlinchy*, 845 F.2d at 806 (citing *United States v. Solomon*, 753 F.2d 1522, 1525 (9th Cir.1985)).

 Under the rules discussed above, in order for expert opinion testimony to be admissible, the party offering the evidence must show that the expert is a qualified expert in the field, the evidence will be of assistance to the trier of fact, experts in the particular field would reasonably rely upon the same type of facts relied upon by the expert in forming his opinion, and the probative value of the opinion testimony is not substantially outweighed by its prejudicial effect. In determining whether these foundational requirements have been satisfied the trial court must make various factual determinations; i.e., whether the expert is qualified, whether the evidence will be of assistance to the fact finder, whether the facts upon which the expert's opinion is based are of the type other experts in the field would reasonably rely on, and whether the probative value of the evidence is outweighed by its prejudicial effect. In the present case, the district court did not address these factual issues. "When a trial court has failed to make findings of fact and conclusions of law on a material issue, '[t]he absence of [such] findings and conclusions may be disregarded by the appellate court *only* where the record is clear, and yields an obvious answer to the relevant question.' Otherwise, a remand is required." *Kugler v. Northwest Aviation*, 108 Idaho 884, 887, 702 P.2d 922, 925 (Ct. App.1985) (citation omitted). After careful review, we conclude that the record in this case does not present a clear and obvious answer to whether the facts relied upon by Dodson in forming his opinion are of a type and sufficiency which other experts in the field would reasonably rely on in forming an opinion on this subject. Because the factual issues underlying the admissibility of Dodson's testimony in this case are not so clear and obvious to allow us to make those determinations for the first time on appeal, we remand for a determination of those issues in accordance with the principles set forth above.

## CONCLUSION

Based on the reasoning set forth above, we conclude that the district court erred in granting Beisner's motion for summary judgment without ruling on the admissibility of the expert opinion testimony presented by Ryan in opposition to the motion. Accordingly, we vacate the judgment and remand for a determination of that issue in accordance with the principles set forth above.

Costs to appellant. No attorney fees are awarded on appeal.

SWANSTROM, J., and WOODLAND, J. Pro Tem., concur.