940 P.2d 1142

**Sharon L. KOLLN and Michael G. Kolln, wife and husband, Plaintiffs–Appellants,**

**v.**

**SAINT LUKE'S REGIONAL MEDICAL CENTER, an Idaho corporation, Michael L. Henbest, M.D., Anesthesia Associates of Boise, P.A., and Terry J. Keller, M.D., Defendants–Respondents.**

No. 22685.

Supreme Court of Idaho,
Boise, February 1997 Term.

July 9, 1997.

D. Bernard Zaleha, Boise, for appellants.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent Henbest. Raymond D. Powers argued.

Cosho, Humphrey, Greener & Welsh, P.A., Boise, for respondent St. Luke's Regional Medical Center. Jack S. Gjording argued, Boise.

Quane, Smith, Howard & Hull, Boise, for respondents Anesthesia Associates of Boise, P.A. and Terry J. Keller, M.D. Bruce R. McAllister argued.

SILAK, Justice.

This is a medical malpractice case, stemming from neck surgery performed on Sharon L. Kolln (Kolln). Kolln alleges that after she had surgery on her neck, she began experiencing pain and reduced mobility in her shoulder, which was diagnosed months later as a torn rotator cuff. Kolln and her husband subsequently sued Saint Luke's Regional Medical Center (St. Luke's); the neurosurgeon, Dr. Michael L. Henbest (Henbest); and the Anesthesia Associates of Boise and Dr. Terry J. Keller (the Anesthesia Respondents) (collectively referred to as the Respondents) for medical malpractice, alleging that their negligence during surgery caused the shoulder injury. When Kolln was unable to provide a sufficient expert affidavit in response to each Respondent's motion for summary judgment, the district court dismissed the complaints, and Kolln appeals.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Underlying Facts.

Kolln underwent neck surgery at St. Luke's on September 14, 1992. The surgery was performed by Dr. Henbest, and the Anesthesia Respondents were in charge of the anesthesia. St. Luke's employed the nurses and surgical technicians who were present during the surgery. The day after the operation, Kolln began experiencing pain in her right shoulder and noticed reduced mobility. Eight months after the surgery, another doctor diagnosed the problem as a torn rotator cuff. Kolln alleges that because she never felt pain or experienced reduced mobility before the surgery, the injury must have happened during the surgery. However, the doctor who diagnosed and treated her rotator cuff injury expressed the opinion that the

injury may have occurred before the surgery, but that Kolln's neck pain was so severe that she did not feel the pain in her shoulder until she had the neck surgery.

The parties agree that there are only two ways the rotator cuff injury could have occurred. Either Kolln's arm was hyperextended and then rotated posteriorly, or was forcefully inverted and pulled down. Such movements would have occurred during surgery if Kolln was moved incorrectly during the surgery or if her arm fell off the operating table. Everyone present during the surgery stated that to the best of their recollection, Kolln was neither moved incorrectly nor did her arm fall off the table. The medical records from that day indicate the same.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

### B. Procedural Background.

The lawsuit in this matter was filed on March 3, 1995, against all of the Respondents. The Anesthesia Respondents filed their motion for summary judgment on May 10, and Kolln submitted the affidavit of her expert, Edward L. Katz, M.D., a Twin Falls neurosurgeon, in response. At a hearing on their motion for summary judgment, the Anesthesia Respondents argued that Katz's affidavit did not show how he had familiarized himself with the standard of care for the Anesthesia Respondents. The district court agreed and granted summary judgment, but further granted Kolln additional time to rectify the foundational problems with the affidavit. Although Katz did submit a second affidavit, the Anesthesia Respondents maintain that it did not solve the foundational problem as to them. The Anesthesia Respondents filed a motion to certify the judgment as final under I.R.C.P. 54(b), which was granted on September 7, 1995.

In the meantime, Henbest filed a motion for summary judgment as well as a motion to strike Katz's first and second affidavits, which the court heard on August 1, 1995. Henbest argued that the affidavits should be stricken because Katz had not laid a sufficient foundation for his opinion. The court struck the affidavits on the basis that Katz had not shown that he had sufficient knowl-

edge of the standard of care, and because there was not sufficient foundation for his opinion. However, the court did allow Kolln to attempt to remedy the deficiencies in Katz's affidavit.

On September 5, 1995, the district court heard Henbest's motion to strike Katz's third affidavit, and for summary judgment. Henbest stated that the person with whom Katz had spoken to familiarize himself with Boise's standard of care was Henbest's expert, who swore in an affidavit that he did not provide Katz with any information regarding the standard of care, because he realized that they were working on opposite sides of the same case. Therefore, Henbest argued that Katz did not have a sufficient background upon which to render an opinion.

At that hearing, there was also a great deal of discussion regarding the substantive basis for Katz's affidavit. The affidavit indicated that in addition to familiarizing himself with the local standard of care, Katz had reviewed the medical records in the case. However, Henbest's attorney and the court noted that the records of everyone present at the surgery indicate that nothing untoward happened during the surgery which would have caused a torn rotator cuff. Further, the doctor who treated Kolln's shoulder opined that the torn rotator cuff may very well have been pre-existing. Henbest argued, and the court agreed, that all of the records which Katz could have reviewed showed that nothing happened during surgery to cause the injury. In fact, the court stated that "[a] careful examination of the records [ ] doesn't leave any room for Dr. Katz to express the opinion that it did happen during surgery." Therefore, the court found that there was no basis for Katz's opinion that the injury happened during surgery.

Kolln also argued that the doctrine of *res ipsa loquitur* should be applied in this case, but the district court noted that there was a question whether *res ipsa* can be used at all in medical malpractice cases in Idaho, since Idaho Code sections 6–1012 and –1013 require direct expert testimony in such a lawsuit. Even if *res ipsa* were of continuing validity in Idaho medical malpractice actions,

the court stated Kolln had the burden of advancing evidence that excluded other possibilities, which she did not. Further, the court noted that *res ipsa* simply raises a presumption, and that once the Respondents provided direct evidence that the injury could not have happened in surgery, the presumption disappeared. Therefore, although the district court did find that there was an adequate showing in Katz's affidavit that he met the requirements for an expert, there was no basis for his actual opinion, and the court granted summary judgment in favor of Henbest.

On November 16, 1995, the district court held a hearing regarding St. Luke's motion for summary judgment. St. Luke's argued that Katz's affidavit did not show how he had familiarized himself with the standard of care for surgical nurses and technicians, and that Katz had done nothing to remedy that deficiency. Kolln argued, with regard to St. Luke's motion only, that she was competent to testify about her medical condition, specifically, about when exactly her injury occurred and what that injury was. While the trial court found that Kolln could testify about when she first experienced pain and loss of mobility, the court found that Kolln could not testify about when the injury occurred, nor could she render her opinion that the Respondents' negligence caused the injury.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

## II.

### ISSUES ON APPEAL

The issues on appeal are:

1. Whether the trial court erred in certifying the judgment for the Anesthesia Respondents as final.

2. Whether the trial court erred in concluding that Kolln lacked the competence to testify regarding when her injury occurred, and whose negligence caused the injury.

3. Whether the trial court erred in ruling that the affidavits of Kolln's expert were insufficient to defeat the Respondents' respective motions for summary judgment.

4. Whether Kolln established the evidentiary foundation for the application of the doctrine of *res ipsa loquitur.*

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, J., concur.

## III.

### STANDARD OF REVIEW

▮▮▮ When this Court reviews a district court's decision on summary judgment, it employs the same standard as that properly employed by the trial court when originally ruling on the motion. *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Finally, this Court liberally construes all disputed facts and will draw all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. 126 Idaho at 529, 887 P.2d at 1036. This is the proper standard to be applied in medical malpractice actions as well. *Rhodehouse v. Stutts,* 125 Idaho 208, 210–11, 868 P.2d 1224, 1226–27 (1994).

▮▮▮ Three of the affidavits at issue in this case are those of a potential expert witness. Our standard of review for a decision whether to admit expert testimony is clear: that decision is within the sound discretion of the trial court, and will not be overturned except upon a showing of abuse of discretion. *State v. Rubbermaid Inc.,* 129 Idaho 353, 357, 924 P.2d 615, 619 (1996). The abuse of discretion standard applies to the admission of opinion testimony by lay persons as well. *Evans v. Twin Falls County,* 118 Idaho 210, 213–14, 796 P.2d 87, 90–1 (1990).

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

## IV.

## ANALYSIS

### A. The District Court Erred In Certifying The Summary Judgment In Favor Of The Anesthesia Respondents As Final.

■ As a threshold issue, we must decide whether the district court properly certified the judgment in favor of the Anesthesia Respondents as final pursuant to I.R.C.P. 54(b). The Anesthesia Respondents filed a motion for certification 35 days after summary judgment was entered in their favor, and certification was granted on September 7, 1995. On November 1, 1995, Kolln's new attorney filed a motion to decertify, which was denied from the bench. The notice of appeal was filed on January 8, 1996, which exceeded the 42 day time limit for filing an appeal set forth in I.A.R. 14. However, if certification was improper, Kolln's appeal as to the Anesthesia Respondents was timely, because the final summary judgment in the case was not granted until November 27, 1995. *See, e.g., Thorn Creek Cattle Ass'n, Inc. v. Bonz*, 122 Idaho 42, 45–6, 830 P.2d 1180, 1183–84 (1992).

■ The decision to grant certification under I.R.C.P. 54(b) is reviewed for an abuse of discretion. *See Thorn*, 122 Idaho at 45, 830 P.2d at 1183. We have cautioned that I.R.C.P. 54(b) certification should not be granted routinely, or as a matter of course; it should be reserved only for "the infrequent harsh case." *Id.* (quoting *Pichon v. L.J. Broekemeier, Inc.*, 99 Idaho 598, 602, 586 P.2d 1042, 1046 (1978)) (additional citations omitted). The party requesting certification must show that it will suffer some hardship or injustice, or provide some other compelling reason why the certification should be granted. *Milbank Mut. Ins. Co. v. Carrier Corp.*, 112 Idaho 27, 28, 730 P.2d 947, 948 (1986). Further, mere delay is not a hardship in and of itself, because I.R.C.P. 54(b) contemplates that there will normally be a delay in cases involving multiple parties and motions. *Id.* at 29, 730 P.2d at 949.

■ At the hearing on the motion to certify, the district court asked the Anesthe-

sia Respondents what prejudice and harm they would suffer if the judgment was not certified as final. The only justification offered was that the Anesthesia Respondents had obtained a quick resolution to their case, and did not feel they should have to wait until the claims against the other defendants were resolved. As noted above, delay is not sufficient justification for certification under I.R.C.P. 54(b). Therefore, certification was not proper in this case, and Kolln's appeal as to the Anesthesia Respondents was timely.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

### B. The District Court Did Not Abuse Its Discretion In Concluding That Kolln's Affidavit And The Affidavit Of Her Expert Were Insufficient To Defeat The Motions For Summary Judgment As To St. Luke's And The Anesthesia Respondents. However, It Did Abuse Its Discretion In Concluding That the Expert's Affidavit Was Insufficient To Defeat The Motion For Summary Judgment As To Henbest.

This case comes to us after three summary judgment decisions. As noted above, summary judgment will be rendered after the pleadings, depositions, and admissions on file, as well as any affidavits, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c). Further, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." I.R.C.P. 56(e). Since the admissibility of evidence is part of the determination whether the affidavits have met the requirements of I.R.C.P. 56(e), the Idaho Rules of Evidence must be considered as well. The specific sections applicable to the affidavits are discussed in the appropriate sections below.

Because this is a medical malpractice action, two Idaho Code provisions are an essential part of our analysis as well. Idaho Code section 6–1012 requires that the community

standard of health care be proven by direct expert testimony, and that the expert must testify that the health care provider did not meet the standard of care applicable to his or her particular field of health care and specialty.[1] Idaho Code section 6–1013 requires that the expert must show that he or she actually holds the opinion, that it is held with a reasonable degree of medical certainty, and that he or she is not only an expert but has actual knowledge of the applicable community standard.[2]

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

**1. The district court did not abuse its discretion in ruling that Kolln, as a lay witness, could not testify via affidavit about when her injury occurred and whose negligence caused her injury.**

Kolln argues on appeal that the district court incorrectly ruled that lay people are "utterly incompetent to testify about the functioning or malfunctioning of their bodies and/or symptoms over time." This statement misconstrues the district court's ruling. It did not rule that lay people are "utterly incompetent" to testify about their bodies. The court ruled that Kolln could testify about when she began experiencing pain and loss of mobility, and could relay what she was told about her diagnosis. However, the district court also ruled that Kolln could not testify about when her injury actually occurred and who was at fault for that injury, particularly since she was not qualified as a medical expert, and therefore could not give her opinion whether the standard of care was breached by the Respondents. Therefore, the district court ruled, Kolln's statements regarding the timing, cause of, and responsibility for her injury could not provide a basis for Katz's opinion that something "must have" happened in the operating room, and that Henbest breached the standard of care. Further, the court found that in light of I.C. § 6–1012's requirement of direct expert tes-

---

1. Idaho Code section 6–1012 provides that:

   In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including, without limitation, any dentist, physicians' assistant, nurse practitioner, registered nurse, licensed practical nurse, nurse anesthetist, medical technologist, physical therapist, hospital or nursing home, or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning. Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any. If there be no other like provider in the community and the standard of practice is therefore indeterminable, evidence of such standard in similar Idaho communities at said time may be considered. As used in this act, the term "community" refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided.

2. Idaho Code section 6–1013 provides in full that:

   **Testimony of expert witness on community standard.**—The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and "(c)" that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

timony, Kolln's testimony was insufficient in and of itself to prevent summary judgment.

I.R.E. 701 governs the admissibility of lay opinion evidence, and provides that:

> If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue.

Particularly at issue in this case is the requirement that the testimony be "rationally based on the perception of the witness." For example, we have previously held that a lay witness could not give his opinion that his wife's cardiac arrest was caused by stress, because that statement was not rationally based on his own perception. *Evans v. Twin Falls County,* 118 Idaho 210, 214, 796 P.2d 87, 91 (1990). Such matters are scientific or far removed from the usual and ordinary experience of the average person and therefore require expert knowledge. *Evans,* 118 Idaho at 214, 796 P.2d at 91.

The relevant statements from Kolln's first affidavit are as follows:

> 3. The surgery performed on me was a C4–C6 decompressive cervical laminectomy, right C4–C5 and C5–C6 foraminotomy. When I awoke from the anesthesia after the operation I immediately noticed that I was unable to move my right arm. I informed Dr. Henbest of this condition on September 15, 1992.
>
> 4. I continued to have problems with my right shoulder and was suspected as having tendinitis. On May 10, 1993, while undergoing orthoscopic surgery at St. Alphonsus Regional Medical Center for the suspected tendinitis, it was discovered that I in fact had a full thickness tear in the cuff right at the supraspinatus insertion on the greater tuberosity. Surgery was then performed to repair that injury.
>
> 5. Prior to September 14, 1992, I had full range of motion of my right shoulder and my right rotator cuff was not torn.
>
> 6. I continue to suffer from the torn rotator cuff. I assert that the injury to my

shoulder occurred during the above described surgery on September 14, 1992, while I was under anesthesia and is the result of the negligence of Dr. Michael L. Henbest, M.D., Dr. Terry J. Keller, M.D., Ron Gilliam, Anesthesia Associates of Boise, P.A. and/or the staff of St. Luke's Regional Medical Center. . . .

■ Kolln's statements that she had no shoulder pain and a full range of motion before surgery, and that she suffered from shoulder pain and reduced range of motion afterward were reasonably based on her perception, and were therefore admissible. Further, she could relate what her doctors told her regarding her diagnosis. The district court did not abuse its discretion in ruling that Kolln could testify on those topics.

However, as a lay person, Kolln is not competent to testify about the cause of her injury, including her statements that the injury occurred during surgery and her statement that the rotator cuff was not torn before surgery. Those opinions are not reasonably based on her perception, particularly given that Kolln was under the effects of general anesthesia during the surgery. Therefore, those statements were not proper subjects for lay opinion. We hold that to the extent that the district court ruled that Kolln could not testify, through her affidavit, about when her injury occurred and the cause of the injury, it did not abuse its discretion.

Kolln also filed a second affidavit which stated, in relevant part:

> 2. Prior to the surgery which was performed upon me on or about September 14, 1992, I had full use of my shoulder and had had no previous problems with my shoulder or its use.
>
> 3. Upon regaining consciousness and while slowly recovering from the effects of the general anesthesia which I was under during surgery, I gradually began to feel a pain in my right shoulder which has persisted since that time. At all times since the surgery, I have not had full use of my right shoulder, and the pain has been continuous, though of varying intensity.

The statements contained in that affidavit are ones that we have already held are proper for lay opinion testimony. However, I.C. § 6–1012 requires that in a medical malpractice action, the plaintiff prove his or her case by direct *expert* testimony. Therefore, Kolln's affidavit, in and of itself, would be insufficient to defeat summary judgment. The further effects of her affidavits on the motions for summary judgment, are discussed *infra* in section IV(B).

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

**2. The trial court did not abuse its discretion in dismissing the claims against the Anesthesia Respondents and St. Luke's, because the affidavits of the plaintiff's expert did not show that the expert had familiarized himself with the standard of care for those health care professionals.**

■ Kolln has argued on appeal that the district court improperly weighed competing expert opinions. Again, this misconstrues the district court's ruling. Rather than weighing competing expert opinions, the district court properly ascertained whether there was an adequate foundation for Katz's opinion, and whether there was a sufficient factual basis. The threshold question which must be addressed before applying the liberal construction and reasonable inferences allowed under I.R.C.P. 56(c), is whether the information in the affidavits is admissible under I.R.C.P. 56(e). *Rhodehouse*, 125 Idaho at 211, 868 P.2d at 1227. The question of admissibility of an expert opinion is one for the trial court. I.R.E. 104(a). As noted above, we will not disturb that decision absent a showing of abuse of discretion. *Rubbermaid*, 129 Idaho at 357, 924 P.2d at 619.

■ I.R.C.P. 56(e) requires that the affidavit show that the affiant is competent to testify to the matters contained therein. Because this is a medical malpractice action, in order for Kolln's expert Katz to be competent, his affidavits must show that Katz familiarized himself with the applicable standard of care, and must show how he familiarized himself with the standard of care. *Rhodehouse*, 125 Idaho at 212, 868 P.2d at 1228.

Under I.C. § 6–1012, a plaintiff in a medical malpractice action must show that the defendant negligently failed to meet the standard of health care for the particular time, community, and profession. Specifically at issue with regard to the Anesthesia Respondents and St. Luke's is I.C. § 6–1012's requirement that the standard to be applied is that of health care providers in the same class, with the same training, education, and area of specialization. Therefore, the expert's affidavit must show that he or she familiarized himself or herself with the standard of care for a particular defendant, whether that defendant be a doctor, nurse, hospital, anesthesia professional, or other health care worker. *See Dunlap v. Garner*, 127 Idaho 599, 605, 903 P.2d 1296, 1302 (1994) (stating that although the expert stated that he was trained as a physician, his affidavits were not sufficient because they did not state that he was trained or experienced in hospital administration, nor did they state that the standard of care for a hospital was the same as that for a physician). Finally, the expert must state how he or she became familiar with the standard of care for the particular health care professional. *Rhodehouse*, 125 Idaho at 212, 868 P.2d at 1228. Therefore, to defeat the motions for summary judgment by the Anesthesia Respondents and St. Luke's, Katz's affidavits must have shown that he was familiar with the standard of care for the Anesthesia Respondents and St. Luke's employees, how he became familiar with those standards of care, what the standard of care was, and how it was breached.

■ The district court granted the Anesthesia Respondents' motion to strike paragraphs two and six of Katz's first affidavit, and also granted summary judgment in favor of the Anesthesia Respondents, on the basis that those paragraphs did not meet the statutory requirements, as explained in *Rhodehouse* and *Garner*. In his first affidavit, Dr. Katz stated the following regarding his familiarity with the standard of care for the Anesthesia Respondents and St. Luke's employees:

1. I am a physician licensed to practice medicine in the State of Idaho. I am board certified in neurosurgery. I am familiar with the standard of health care for neurosurgeons practicing in the City of Boise, Ada County, Idaho, for 1992. I am acquainted with neurosurgeons in Boise who engage in the practice of neurosurgery, the nature and scope of their practice in this specialty, and the general procedures utilized by them in this specialty in Boise, Ada County, Idaho, for 1992.

2. I am also familiar with the standard of health care for surgical teams, which includes certified surgical technicians, surgical technicians, registered nurses, anesthesiologists and certified nurse anesthetists, practicing in the City of Boise, Ada County, Idaho, for 1992.

Katz further stated that he held his views with a reasonable degree of medical certainty, and that he had reviewed records pertaining to Kolln's treatment. Paragraph six of that affidavit then concluded that the Anesthesia Respondents and St. Luke's breached the applicable standards of care.

The affidavit does not indicate how Katz became familiar with the standard of care for the Anesthesia Respondents or St. Luke's, nor does it state that he had training as an anesthesia professional, a nurse, or a surgical technician. The affidavit does not state that the standard of care for the Anesthesia Respondents and St. Luke's was the same as that for neurosurgeons, nor does it state what the standard of care is for any of the Respondents. It simply states that Katz knew what the standard of care was for the Respondents, and that the Respondents breached the standard of care. This is insufficient to meet the requirements of I.R.C.P. 56(e) and I.C. §§ 6–1012 and 6–1013. Therefore, the district court properly struck paragraphs two and six of Katz's first affidavit, and properly granted summary judgment in favor of the Anesthesia Respondents.

After granting summary judgment in favor of the Anesthesia Respondents, but before St. Luke's filed its motion for summary judgment, the district court gave Kolln two more opportunities to correct the defects in Katz' affidavit. However, neither the second nor the third affidavit contain any reference at all to St. Luke's or the Anesthesia Respondents. Therefore, since none of the affidavits provided the required information regarding the standard of care for St. Luke's, the district court properly granted summary judgment in favor of St. Luke's and the Anesthesia Respondents.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

JOHNSON, Justice.

3. **The District Court Abused Its Discretion In Holding That Katz's Third Affidavit Did Not Raise Genuine Issues Of Material Fact Sufficient To Preclude Summary Judgment.**

We hold that Dr. Katz's third affidavit is not speculative or conclusory, sets forth specific facts to support his opinion, and raises genuine issues of material fact that preclude summary judgment concerning the claim against Dr. Henbest. Thus, we vacate the decision of the district court in this regard and remand for further proceedings consistent with this opinion.

Recently, in *Kessler v. Barowsky*, 129 Idaho 647, 931 P.2d 641 (1997), the Court dealt with a comparable affidavit and vacated a summary judgment. In *Kessler*, we said:

The department contends that the opinion of Lenore's expert that the police officers continued to use deadly force when it was no longer objectively reasonable to do so and thereby caused Bobbie's death is conclusory, speculative, and not based on facts in the record. We conclude that Lenore's expert referred to sufficient facts contained in the record regarding the injuries sustained by Bobbie to provide a foundation for the admissibility of his opinion. Foremost among these facts are the following:

a. He had been hit by three nonfatal shots in his left and right shoulders while he was turning to face or was facing the police officers.

b. After he had fallen from the impact of those shots with his head toward the door and his feet toward the shooters so as to be FACING AWAY FROM

THEM, (emphasis supplied [by Lenore's expert] ) he was shot twice more from behind.

c. The fatal shot entered his left hip/buttock while he was prone and continued through his long axis to penetrate his chest while still another shot went through his right buttock at a similar angle.

d. Additionally, there are four shots to the floor in front of him and two shots to the floor behind him that more probably than not were fired after he went down.

e. The physical evidence clearly shows that the police officers continued to shoot at him after he had turned and dropped face down from their initial volley of shots.

*Id.* at 653, 931 P.2d at 647.

█ In a similar fashion, Dr. Katz's third affidavit refers to sufficient facts regarding the cause of Kolln's torn rotator cuff to provide a foundation for the admissibility of his opinion that the injury to Kolln's shoulder occurred during the transfer of Kolln from the gurney to the operating table or from the operating table to the gurney during the surgery. Foremost among these facts are the following:

1. Prior to the surgery performed by Dr. Henbest, Kolln had no signs or symptoms which would be consistent with a rotator cuff tear.

2. The day following the surgery, Kolln exhibited signs and symptoms consistent with a rotator cuff tear.

3. During the surgery performed by Dr. Henbest, Kolln was under general anesthesia and had no control over the instrumentalities capable of injuring her in the operating room.

4. One of two things caused Kolln's injury, either her arm was hyperextended and rotated posteriorly, or it was forcefully inverted and pulled down.

In both the affidavit of Lenore's expert in *Kessler* and the third Katz affidavit in the present case, the facts stated circumstantially support the expert's opinion. This is not contrary to I.R.C.P. 56(e), which requires that the non-moving party's response, "by affidavits or as otherwise provided in [I.R.C.P. 56], must set forth specific facts showing that there is a genuine issue for trial." In *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969), the Court clearly upheld the use of circumstantial evidence to create a genuine issue of material fact:

In the present case the respondent by the affidavit of its employee Clarence Tanner, unequivocally denied starting the fire in question. Under such circumstances, it was incumbent upon the appellants to respond, in detail as specific as that of the moving party, setting forth facts contradicting the evidence contained in the moving party's affidavit. I.R.C.P. 56(e). The appellants responded with the affidavit and deposition of Mr. Loughmiller setting forth circumstantial evidence to refute Mr. Tanner's affidavit. Respondent contends that I.R.C.P. 56(e) requires a party opposing a motion for summary judgment to contradict the moving party's affidavits by affirmative, direct evidence and that therefore the supporting materials tendered by the appellants were insufficient to defeat the motion for summary judgment. It is settled, however, that facts can be proven by circumstantial, as well as by direct, evidence. *Dick v. Reese*, 90 Idaho 447, 412 P.2d 815 (1966). If the circumstantial evidence submitted by the appellants tends to prove that respondent was responsible for the fire, thus creating a genuine issue over the cause of the fire, it would be sufficient to defeat the motion for summary judgment.

*Id.* at 868–69, 452 P.2d at 365–66.

The ruling of the district court that Katz's affidavit was insufficient to preclude summary judgment as to Dr. Henbest is vacated, and the case is remanded for further proceedings consistent with this opinion.

TROUT, C.J., and McDEVITT, J., concur.

SILAK and SCHROEDER, JJ., dissent.

SILAK, Justice.

**C. The Doctrine Of *Res Ipsa Loquitur* May Not Be Used To Prove Negligence In A Medical Malpractice Action In Idaho.**

█ Kolln also argues that even if she is unable to come forward with direct evi-

dence that her injury occurred during surgery and was the fault of the Respondents, the doctrine of *res ipsa loquitur* be applied in this case. In Idaho, the doctrine has two requirements:

> "A plaintiff, seeking to invoke the doctrine must show: (1) that the agency or instrumentality causing the injury is under the control and management of the defendant; and (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence."

*LePelley v. Grefenson*, 101 Idaho 422, 426, 614 P.2d 962, 966 (1980) (quoting *Hale v. Heninger*, 87 Idaho 414, 422, 393 P.2d 718, 722 (1964)). Therefore, *res ipsa loquitur* is limited to those cases which are within the common knowledge and experience of the average layperson.

In *LePelley*, we assumed without holding that *res ipsa loquitur* may no longer be used in Idaho in medical malpractice cases, given I.C. § 6–1012's requirement of direct expert testimony. Today, we explicitly hold that the doctrine is not applicable in medical malpractice actions in Idaho. *Res ipsa* is not direct proof, but rather a presumption which does not shift the burden of proof. *See Hale*, 87 Idaho at 422, 393 P.2d at 722. Instead, it "creates an inference of the breach of the duty imposed and *replaces direct evidence with a permissive inference of negligence.*" *Christensen v. Potratz*, 100 Idaho 352, 355, 597 P.2d 595, 598 (1979) (emphasis added). This flies in the face of I.C. § 6–1012's requirement of direct expert testimony. It also contradicts the Legislature's express intent that:

> It is the declaration of the legislature that appropriate measures are required in the public interest to assure that a liability insurance market be available to physicians, hospitals and other health care providers in this state and that the same be available at reasonable cost, thus assuring the availability of such health care providers for the provision of care to persons in the state. It is, therefore, further declared to be in the public interest that the liability exposure of such health care providers be

limited and made more definable by *a requirement for direct proof of departure from a community standard of practice.*

1976 IDAHO SESS. LAWS 277 (emphasis added). Given the express language of I.C. § 6–1012, and the declaration of intent by the Legislature, it is clear that *res ipsa loquitur* is no longer a viable doctrine in medical malpractice cases in Idaho.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

## V.

## CONCLUSION

We reverse the decision of the district court to certify the Anesthesia Respondent's judgment as final. However, this alone does not necessitate a remand; it merely makes this appeal timely. We affirm the district court's decision regarding the admissibility and effect of Kolln's affidavit and the affidavits of her expert as to St. Luke's and the Anesthesia Respondents, but reverse the decision of the district court as to Henbest. Therefore, we affirm the summary judgments rendered in favor of the Respondents St. Luke's and the Anesthesia Respondents, but vacate the summary judgment rendered in favor of Henbest, and remand for further proceedings consistent with this opinion.

We award costs on appeal to Respondents St. Luke's and Anesthesia Respondents as the prevailing parties. Because Henbest did not prevail, and because Kolln did not prevail in full, we do not award costs as between Kolln and Henbest. The Anesthesia Respondents requested attorney fees on appeal pursuant to I.A.R. 41 and I.C. § 12–121. Because we reversed the district court's decision certifying the judgment in favor of the Anesthesia Respondents as final, we are not left with the abiding belief that Kolln's appeal as to the Anesthesia Respondents was brought frivolously, unreasonably, or without foundation. Therefore, we decline to award attorney fees to the Anesthesia Respondents. The remaining Respondents did not request attorney fees on appeal.

SILAK, Justice, dissenting in part.

I must dissent from part IV(B)(3) of the Court's opinion, which reverses the district court's ruling that Katz's third affidavit was insufficient to withstand summary judgment as to Henbest. I agree with the majority that the affidavit adequately set forth Katz's experience and education, thus qualifying him to give expert testimony regarding neurosurgeons. Further, the affidavit clearly and expressly stated what the standard of care was, and stated that Katz held his opinion to a reasonable degree of medical certainty. Therefore, the affidavit meets the threshold requirements of I.C. § 6–1013 and I.R.C.P. 56(e), as set forth in *Rhodehouse* and *Dunlap,* in that Katz demonstrated that he was competent to testify to the matters stated in his affidavit.

However, that is not the end of the inquiry into whether the district court erred in granting summary judgment to Dr. Henbest. Because I.R.C.P. 56(e) requires that the affidavit set forth such *facts* as would be admissible into evidence, the Idaho Rules of Evidence regarding expert testimony must also be considered. I.R.E. 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." I.R.E. 703 provides that

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We have stated that there must be some factual basis for the opinions an expert expresses in his or her affidavit. *Oats v. Nissan Motor Corp. in the U.S.A.,* 126 Idaho 162, 166, 879 P.2d 1095, 1099 (1994). One of the issues in *Oats* was whether the body panels of the car in question were defectively weak. In opposition to a defense motion for

summary judgment, the plaintiff produced the affidavit of an expert who stated that he reviewed accident scene photos and photos of the vehicle in question, police reports, and the plaintiff's medical record. The expert then stated that in his opinion, the body of the car in question "was 'not designed to withstand any significant impact affecting the roof structure.'" *Id.* However, the expert's affidavit did not state a specific factual basis from his review of the records for his opinion, and the expert further acknowledged that there were some records he had not reviewed.

We stated that:

> it was incumbent on Oats to set forth *specific facts* showing there was a genuine issue whether the 280Z 2 + 2's body panels were defectively weak. *[The expert's] opinion* that the 280Z 2 + 2's body was defectively weak *was wholly conclusory, and merely repeated allegations contained in Oat's complaint. It did not set forth any specific facts* showing that the 280Z 2 + 2 had defectively weak body panels, as required by I.R.C.P. 56(e).

*Id.* (citing *Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986)) (stating that if an affidavit is merely conclusory, does not set forth specific facts, and simply repeats the allegations in the complaint, it is just the type of affidavit prohibited by I.R.C.P. 56(e)) (emphasis added). On review of another case dismissed on summary judgment, our Court of Appeals stated that "[b]ecause a verdict cannot rest on speculation or conjecture, expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict, and therefore is inadmissible as evidence under Rule 702." *Ryan v. Beisner,* 123 Idaho 42, 46, 844 P.2d 24, 28 (Ct.App.1992) (citation omitted).

The prohibition against speculative, conclusory, or unsubstantiated expert opinions is especially relevant in the medical malpractice context, since *direct* expert testimony is required by statute. In a previous medical malpractice action, we stated that:

> "[i]f a party resists summary judgment, *it is his responsibility to place in the record*

*before the trial court the existence of controverted material facts* which require resolution by trial. A party may not rely on his pleadings nor *merely assert that there are some facts which might or will support his legal theory, but rather he must establish the existence of those facts by deposition, affidavit, or otherwise.* Failure to so establish the existence of controverted material facts exposes a party to the risk of a summary judgment."

*Sparks v. St. Luke's Reg'l. Med. Ctr.*, 115 Idaho 505, 509, 768 P.2d 768, 772 (1988) (quoting *Berg v. Fairman*, 107 Idaho 441, 444, 690 P.2d 896, 899 (1984)) (first italics in *Sparks*, second italics added). This requirement of direct expert testimony sets medical malpractice cases such as the one before us apart from other types of cases such as *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969), cited by the majority. While we may permit circumstantial evidence to be used in cases other than medical malpractice to create a genuine issue of material fact, I would hold that the non-moving party must allege facts in the nature of direct evidence in order to withstand summary judgment in a medical malpractice case.

The majority opinion states that Katz's third affidavit set forth facts which provided a sufficient basis for his conclusion that Henbest breached the standard of care as to Kolln. Specifically, the majority asserts that Katz provided the following "facts":

"1. Prior to the surgery performed by Dr. Henbest, Kolln had no signs or symptoms which would be consistent with a rotator cuff tear.

2. The day following the surgery, Kolln exhibited signs and symptoms consistent with a rotator cuff tear.

3. During the surgery performed by Dr. Henbest, Kolln was under general anesthesia and had no control over the instrumentalities capable of injuring her in the operating room.

4. One of two things caused Kolln's injury, either her arm was hyperextended and rotated posteriorly, or it was forcefully inverted and pulled down."

It is the final "fact" with which I must take issue, first because it misstates what Katz said in his affidavit, and second, if one looks at what Katz actually said, it is not a fact. In his third affidavit, after stating the standard of care, Katz actually stated the following:

5. The opinions expressed herein are my own and are based upon reasonable degree of medical certainty.

6. I have reviewed the records of the care of Ms. Kolln for St. Luke's Regional Medical Center, Michael L. Henbest, M.D., James D. Redshaw, M.D., the operative report of Jeffrey Hessing, M.D., the Affidavits of Michael L. Henbest, M.D., Terry J. Keller, M.D., Ron Gilliam, CRNA and Sharon L. Kolln and the deposition of Michael L. Henbest, M.D.

7. Based upon my review of the above records it is my opinion within a reasonable medical certainty, that prior to the surgery performed by Dr. Henbest on September 14, 1992, Ms. Kolln had no signs or symptoms which would be consistent with a rotator cuff tear. However, the day following the surgery, Ms. Kolln did exhibit signs and symptoms consistent with a rotator cuff tear. Based upon these findings and within a reasonable degree of medical certainty the injury to Ms. Kolln's shoulder occurred during the transfer of Ms. Kolln from the gurney to the operating table or from the operating table to the gurney during the subject surgery of September 14, 1992.

8. A torn rotator cuff is the type of injury which in the ordinary course of a C4–C6 decompressive cervical laminectomy, right C4–C5 and C5–C6 foraminotomy and the transfer of Ms. Kolln would not have occurred had Dr. Henbest and the surgical team (which includes certified surgical technicians, surgical technicians, registered nurses, anesthesiologists and certified nurse anesthetists), used due care.

9. Due to the fact that Ms. Kolln was under general anesthesia during the course of the operation she had no control over the instrumentalities capable of injuring her within the confines of the operating room.

10. There are essentially two possibilities which could have caused Ms. Kolln's injury. Either her right arm was hyperextended and rotated posteriorly or forcefully inverted and pulled down. One of these two events must have therefore occurred sometime during the surgery or her transfer. The occurrence of either of these events would be a breach of the standard of care applicable to physicians engaged in the practice of neurosurgery in Boise, Ada County, Idaho in September, 1992.

11. Based upon my analysis and review of the aforementioned medical records, affidavits and deposition it is my opinion and with reasonable medical certainty that Michael L. Henbest, M.D. failed to comply with the standard of care applicable to physicians engaged in the practice of neurosurgery in Boise, Ada County, Idaho in September, 1992. As a proximate cause of Dr. Henbest's failure to comply with the standard of care Ms. Kolln was injured.

Paragraph ten is not stated as a "fact", by its very terms. It states that there are two "possibilities" which "could have caused" Kolln's injury, and that one of those events "must therefore have happened" to cause the injury. However, Katz was unable to state that one of those two events *did* happen. This is much different than the majority's statement that Katz stated, as a fact, that "[o]ne of two things caused Kolln's injury...." That difference clearly sets this case apart from *Kessler*. The information provided the affidavit at issue in *Kessler* contained actual facts, statements of what had actually happened. In contrast, paragraph ten contains speculative, conclusory statements of what "must have" or could have happened. Such statements cannot be sufficient to withstand summary judgment.

This affidavit suffers from the very same defects as the affidavit in *Oats*. Although Katz concluded in paragraph seven of his affidavit that "[b]ased upon these findings and within a reasonable degree of medical certainty the injury to Ms. Kolln's shoulder occurred" during the operation, the affidavit fails to state any specific facts gleaned from the reviewed records which support the con-clusion that Henbest breached the standard of care. The affidavit contains the merely speculative statements that one of two events could have caused the injury during surgery. Thus, the affidavit concludes that one of those two events "must have" occurred during surgery, speculating that since Kolln said her pain and immobility started only after surgery, the injury had to have happened during the operation. However, there is no factual support in the affidavit for that conclusion, and mere conjecture or allegation is not sufficient to withstand summary judgment.

All of the medical records, reports, affidavits and depositions reviewed by Katz in preparing to render his opinion are in the record on appeal, with the exception of a Dr. Redshaw's records. None of those record offer any facts which provide a basis for Katz's opinion; indeed, all state that nothing unusual happened during surgery which could have caused a torn rotator cuff. While Katz was entitled to review and consider Kolln's statements about the onset of her pain, and even her inadmissible opinion regarding the timing of her injury and the cause of her injury, those statements are not sufficient to support Katz's speculative and conclusory opinion that the injury must have happened during surgery.

Not only is Katz's opinion speculative and conclusory, but an implicit and necessary assumption, if one is to accept the conclusions in Katz's affidavit, is that those present before, during and after the surgery were misrepresenting certain facts in their records, affidavits and depositions. That implicit assumption is in and of itself speculative, conclusory and without any foundation. Further, that sort of assumption would take this case into the realm of the sort of speculative testimony condemned by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). While that case dealt specifically with expert *scientific* testimony, as opposed to expert medical testimony of the type at issue in this case, the cautionary words of the Supreme Court bear repeating here, particularly given that Federal Rule of Evidence 702 is virtually identical to I.R.E. 702, and both rules cover

all types of expert testimony. As the Supreme Court noted, "the word 'knowledge' [in Rule 702] connotes more than *subjective belief or unsupported speculation.* The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" *Id.* at 590, 113 S.Ct. at 2795 (emphasis added). The Court held that "[p]roposed testimony must be supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known." *Id.*

Thus, based on the foregoing analysis, I would hold that the district court did not abuse its discretion in ruling that Kolln's expert affidavits did not meet the requirements of I.R.C.P. 56(e), and was therefore inadmissible.

SCHROEDER, J., concurs.